

EXECUTION VERSION

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into by and among the United States of America, acting through the United States Attorney's Office for the Northern District of New York and on behalf of the United States Small Business Administration (SBA) and the United States Department of Veterans Affairs (VA) (collectively, the "United States"), The Hayner Hoyt Corporation (Hayner Hoyt), LeMoyne Interiors (LeMoyne), Doyner Inc. (Doyner), Gary Thurston, Jeremy Thurston, Ralph Bennett, Steve Benedict, and 229 Constructors, LLC ("229 Constructors") (collectively, the "Defendants") and John Rubar (Relator), through their authorized representatives. Collectively, all of the above will be referred to as "the Parties."

### RECITALS

A.      Hayner Hoyt is a general contractor and construction management firm located in Syracuse, New York.

B.      LeMoyne is a contractor that performs drywall, metal framing, acoustic ceiling, and finish carpentry work located in Syracuse, New York.

C.      Doyner is a contractor that performs masonry work, concrete work, and selective demolition located in Syracuse, New York.

D.      Hayner Hoyt, LeMoyne, and Doyner are wholly owned subsidiaries of THHC Holding, Inc. (THHC), which is jointly owned by Gary and Jeremy Thurston. Gary Thurston serves as Chairman and Chief Executive Officer of Hayner Hoyt, President of LeMoyne, and President of Doyner ("Hayner Hoyt's CEO"), and Jeremy Thurston serves as President of Hayner Hoyt ("Hayner Hoyt's President").

1

E.       In April 2009, 229 Constructors was registered as a New York limited liability company and service-disabled veteran Ralph Bennett (the "Service-Disabled Veteran") was identified as 229 Constructors' 51% owner and president. At that time, the Service-Disabled Veteran had been an employee of Hayner Hoyt for five years, and his duties included overseeing its warehouse. Steve Benedict ("229 Constructors' Co-Owner"), who at that time was also employed by Hayner Hoyt and listed on the company's website as one of five "key" officials, was identified as 229 Constructors' 49% owner and vice president.

F.       In May 2009, Hayner Hoyt's President: (i) set up the email account "229constructors@gmail.com" and advised others that he "will check" that account; and (ii) set up an email account under the Service-Disabled Veteran's name, "rbennett@229constructors.com" and advised the Service-Disabled Veteran and others that the account "is up and running" and is "going to my Outlook to be checked."

G.       In May 2009, shortly after its formation and prior to 229 Constructors bidding on or being awarded a contract, Hayner Hoyt's CEO sent a business plan to 229 Constructors' bonding company that stated "Principals of the Hayner Hoyt Corporation will be involved in the management of [229 Constructors] but not visible in any way in order to preserve the SDVOB status of the business." The document further explained that the Service-Disabled Veteran's role "would not be management in any significant way."

H.       In July 2009, a Hayner Hoyt employee contacted 229 Constructors' bonding company regarding "the first job our new company 229 Constructors ha[s] been awarded. . . ." She asked the bonding company to deliver an insurance certificate and

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

performance bond for 229 Constructors, but to "make sure that the outside address is addressed to 229 Constructors and that Hayner Hoyt is not referenced anywhere."

I.      Also in July 2009, Hayner Hoyt's CEO sent 229 Constructors' co-owners an email that reads "I wrote you each a check for $20,000 that will open our bank account for 229[,]" and offered to have Hayner Hoyt's comptroller help the two co-owners open the account. Hayner Hoyt's CEO represents that he provided this money to 229 Constructors' co-owners pursuant to a promissory note dated August 1, 2009.

J.      In August 2009, a subcontractor that had worked on Hayner Hoyt projects emailed a Hayner Hoyt employee to ask whether "you guys" intend to bid on a particular project. That email was forwarded to Hayner Hoyt's President, who replied (with a copy to a 229 Constructors employee) that "229 is bidding on both" and that the subcontractor "should submit bids to . . . 229 Constructors."

K.      In May 2010, 229 Constructors' bonding company sent Hayner Hoyt's CEO a request for certain underwriting information, including "for [c]larification on who is running" 229 Constructors. The bonding company cited a "[n]ote in the business plan saying [the Service-Disabled Veteran] is not running 229." Hayner Hoyt's CEO responded that he was "not sure which Business Plan you have," but that he and Hayner Hoyt's President meet weekly with 229 Constructors' co-owners and staff, and "help manage the work and company." Hayner Hoyt's CEO further stated that he personally oversees 229 Constructors' accounts receivable, accounts payable, and banking, and that a non-veteran (229 Constructors' Co-Owner) "really runs 229. We just help him."

L.      From 2009 through 2012, Hayner Hoyt's CEO oversaw many financial decisions for 229 Constructors. In April 2011, for example, an accounting firm retained

3

EXECUTION VERSION

to prepare 229 Constructors' financials sent draft financial statements directly to Hayner Hoyt's CEO, together with a note stating: "I thought you would want to review first before sharing with the others." After reviewing the statements, Hayner Hoyt's CEO responded (and copied officials from 229 Constructors) that he would have 229 Constructors "put the letter on 229 letterhead and have [the Service-Disabled Veteran] sign it."

M.     While president of 229 Constructors, the Service-Disabled Veteran continued to oversee tool inventory for Hayner Hoyt and to plow snow for Hayner Hoyt. He was not involved in making many significant management decisions for 229 Constructors.

N.     In May 2012, Welch Construction submitted bid protests to SBA in connection with two "set-aside" contracts that the VA had awarded to 229 Constructors. Among other things, Welch Construction alleged that 229 Constructors was established "to take advantage of the Service Disabled Veteran Owned Small Business (SDVOSB) set-aside program" and that "Hayner Hoyt is using [the Service-Disabled Veteran's] disability status as a Veteran as a pass through for their multiple [subsidiaries]," including Doyner and LeMoyne. They further alleged that Hayner Hoyt "provided support in terms of financial, bonding and management" to 229 Constructors.

O.     In June 2012, in response to the bid protests, SBA found 229 Constructors to be "other than small," due to its "affiliation" with Hayner Hoyt with respect to a shared key employee (229 Constructors' Co-Owner), office space, equipment, and other resources, thus rendering 229 Constructors ineligible to bid on certain federal contracts reserved for small businesses, including the two contracts in question.

4

EXECUTION VERSION

P.      Also in June 2012, a VA contractor (the "VA Contractor") conducted a site visit of 229 Constructors and preliminarily found that, although the Service-Disabled Veteran was 51% owner of 229 Constructors, he "did not appear" to "control" 229 Constructors since he did not appear to run the day-to-day operations of the business or know much about the company's operations. The VA Contractor also noted that 229 Constructors appeared to have been established after the Service-Disabled Veteran's business partner, a longtime Hayner Hoyt employee (229 Constructors' Co-Owner) "saw an opportunity to gain set aside business, particularly from the VA and is using [the Service-Disabled Veteran] to take advantage of this opportunity." The VA Contractor also observed that the Service-Disabled Veteran "has no experience in management or particularly in any type of construction management. He also has no background in construction at all."

Q.      In July 2012, 229 Constructors received an email from its bonding company that referenced the SBA's size determination from the prior month and asked, "What discussions have been had internally relative to 229's business plan moving forward?" A 229 Constructors' employee forwarded that email to Hayner Hoyt's CEO, who responded directly to the bonding company, stating that he "understand[s] [the bonding company's] desire to keep this at arm's length but at this point it really doesn't matter" and that he and Hayner Hoyt's President "have only had a brief discussion but it is almost certain that we'll terminate operations of 229."

R.      Following the size determination, 229 Constructors began shutting down with the intent of ceasing all operations, other than those necessary to liquidate the business, no later than December 2012. During 2012, the Service Disabled Veteran and

229 Constructors' Co-Owner received distributions totaling $670,518.  After receiving the last of these distributions in December of 2012, as 229 Constructors was in the final stages of administratively winding down, the Service Disabled Veteran and 229 Constructors' Co-Owner made what they represent were unsolicited "gift payments" of $26,000 each to, or for the benefit of, Hayner Hoyt's CEO, by issuing four checks in the amount of $13,000 (two dated December 21st and two dated December 26th, respectively), in an effort to show their appreciation for the assistance he had provided to them.

S.      The United States has long used government contracting to promote small businesses in general, and specifically small businesses owned by veterans who have service-connected disabilities.  *See, e.g.,* 15 U.S.C. § 657f; 48 C.F.R. 19.201(a).  It is federal policy that small businesses should receive "a fair proportion of the total purchases and contracts . . . for the Government."  15 U.S.C. § 631(a).  Congress has directed the President to set government-wide goals (and each agency to set agency-wide goals) for procurement from small businesses, including in certain socioeconomic categories.  15 U.S.C. § 644(g)(1)(A) and (B).  The government-wide goal for procurement from service-disabled veteran-owned small businesses must be at least three percent.  15 U.S.C. § 644(g)(1)(A)(ii).

T.      In 2003, Congress amended the Small Business Act to strengthen efforts to support service-disabled veteran-owned small businesses.  *See* Veterans Benefits Act of 2003 (2003 Act), Pub. L. No. 108-183, 117 Stat. 2651.  Among other things, Congress gave contracting officers discretion to set aside contracts of any size to service-disabled veteran-owned small businesses where certain conditions are met.  15 U.S.C. § 657f.

U.     In 2006, Congress enacted the Veterans Benefits, Health Care, and Information Technology Act of 2006 (2006 Act), Pub. L. No. 109-461, 120 Stat. 3403, which included a targeted procurement program exclusively for the VA.  *See* 38 U.S.C. § 8127.  Subsection (a) of section 8127 requires the Secretary of the VA to set annual goals for contracting with veteran-owned and service-disabled veteran-owned small businesses that equal or exceed the government-wide goal established by the President under the Small Business Act.  38 U.S.C. § 8127(a)(3).

V.     A firm is eligible for service-disabled veteran-owned small businesses set-aside contracts only if it qualifies as a "small business concern."  The SBA sets the applicable size standards defining whether a business entity is a small business concern, *see* 13 C.F.R. Part 121, and the VA applies the definition of a small business concern set forth in 48 C.F.R. § 2.101 (citing SBA's size regulations).  In addition to being a small business concern, the firm must be "owned and controlled by . . . a veteran with a service-connected disability."  38 U.S.C. § 8127(f)(4); 38 C.F.R. § 74.2.  Regulations the VA issued to implement the 2006 Act state that to qualify for a contract that is set aside for service-disabled veteran-owned small businesses, a firm must be at least 51% unconditionally and directly owned by one or more service disabled veterans.  38 C.F.R. § 74.3.  Additionally, the service-disabled veteran must control "both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations."  *Id.* § 74.4(b).  Although non-veterans may be involved in the management of a firm, the non-veteran may not: (1) exercise actual control or have the power to control the applicant or participant; or (2) receive compensation from the applicant or participant in any form as directors, officers or

7

employees, including dividends, that exceeds the compensation to be received by the highest officer who must be a service-disabled veteran. *Id.* § 74.4(g).

W.     On July 10, 2014, Relator filed a qui tam complaint in the United States District Court for the Northern District of New York captioned *United States of America ex rel. John Rubar v. The Hayner Hoyt Corporation, Jeremy Thurston, Gary Thurston, LeMoyne Interiors, Doyner Inc., Ralph Bennett, and 229 Constructors, LLC*, Case No. 5:14-cv-830, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). Relator alleges, among other things, that the individuals and entities named in the Civil Action knowingly presented, caused to be presented, and conspired to present, false and fraudulent claims and statements to the United States in connection with contracts that were set-aside for performance by service-disabled veteran-owned small businesses. The United States intervened in the Civil Action on March 11, 2016.

X.     The United States contends that it has certain civil claims against Defendants under the False Claims Act, codified at 31 U.S.C. §§ 3729-3733, and the common law, as specified below, for allegedly engaging in the conduct set forth in this Paragraph in connection with the federal contracts awarded to 229 Constructors, and any subcontracts awarded by 229 Constructors under the federal contracts (collectively the "Covered Conduct"). The United States alleges that the conduct set forth in Paragraphs A-R above was part of a scheme devised and engaged in by Hayner Hoyt – through its CEO, its President, other employees, and its affiliates LeMoyne and Doyner – to take advantage of the service-disabled veteran-owned small business requirements in order to secure contracts for 229 Constructors, and subcontracts for Hayner Hoyt and its affiliates

on federally funded projects.  The United States alleges that both Hayner Hoyt's President and CEO – neither of whom is a service-disabled veteran – exerted significant influence over 229 Constructors' decision-making process during the bid, award, and performance of these contracts.  The United States contends that they exercised influence over 229 Constructors in various ways, including by staffing the company entirely with then-current and former Hayner Hoyt employees and one of their spouses.  The United States contends that they also provided 229 Constructors with considerable resources, both financial and human capital, which provided the latter company a competitive advantage over legitimate service-disabled veteran-owned small businesses neither affiliated with nor controlled by a larger, non-veteran owned corporation.  In connection with the award of contracts to 229 Constructors, the United States alleges that Hayner Hoyt (through its CEO, its President, and other employees) caused certifications and statements to be made to the VA representing that 229 Constructors met all requirements to be a service-disabled veteran-owned small business when they knew, or should have known, that 229 Constructors did not, in fact, meet such requirements.  The United States alleges that 229 Constructors was, at all relevant times, affiliated with and controlled by Hayner Hoyt.  The United States alleges that, by diverting contracts and benefits therefrom intended for service-disabled veterans towards an ineligible company, Defendants undercut the purpose of statutorily created programs designed to encourage contract awards to legitimate service-disabled veteran-owned small businesses.  The United States alleges that it did not receive the intended benefits of service-disabled veteran-owned small businesses receiving and performing federal contracts.  The United States contends that the alleged scheme resulted in the government's inappropriate award

9

EXECUTION VERSION

of approximately $14.4 million in federal contracts to 229 Constructors, of which Hayner Hoyt, Doyner, and LeMoyne received $1,312,969 in subcontracts.

      Y.      Defendants admit, acknowledge, and accept responsibility for that which is set forth in Paragraphs A-R above, as well as the following allegations: (1) each Defendant's conduct in connection with the federal contracts awarded to 229 Constructors violated SBA and VA regulations designed to encourage contract awards to legitimate service-disabled veteran-owned small businesses; (2) Hayner Hoyt's CEO and its President each exerted an inappropriate level of influence over 229 Constructors; (3) Hayner Hoyt's affiliation with 229 Constructors contributed to 229 Constructors' ability to compete for and perform small business contracts for which the latter company was ineligible; and (4) 229 Constructors provided Hayner Hoyt with $630,669 in service-disabled veteran-owned small business subcontracts; Doyner with $146,850 in such subcontracts; and LeMoyne with $535,450 in such subcontracts (which totals $1,312,969 and amounted to 0.34% of the those companies' total combined revenue from 2009-2012) to which they were not entitled for the reasons acknowledged in this Paragraph, and they generated approximately $296,819 in gross profits as a result.

      Z.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

### TERMS AND CONDITIONS

10

**EXECUTION VERSION**

1.    Hayner Hoyt, on behalf of all defendants, agrees to pay the United States $5,000,000 (Settlement Amount), plus simple interest accrued thereon at the rate of 2.375% per annum from November 6, 2015, and continuing until and including the day that the final payment is made under this Agreement.  Payment to the United States of the Settlement Amount shall be made by electronic funds transfer to the United States Department of Justice account, referencing USAO file number 2014V01218 and Consolidated Debt Collection System number 2012A08767, in accordance with written instructions to be provided by the United States Attorney's Office for the Northern District of New York prior to or upon its execution of the Agreement.  On the Effective Date of this Agreement, this sum shall constitute a debt due and immediately owing to the United States.  The entire balance of the Settlement Amount, or any portion thereof, plus any interest, as defined above, accrued on the principal as of the date of any prepayment, may be prepaid without penalty.

a.    By no later than thirty (30) days following the effective date of this agreement, Hayner Hoyt shall make payment to the United States of $2,500,000, plus simple interest, at the rate identified in Paragraph 1 above.

b.    By no later than six (6) months following the effective date of this agreement, Hayner Hoyt shall make payment to the United States of $2,500,000, plus simple interest, at the rate identified in Paragraph 1 above.

2.    Conditioned upon the United States receiving the Settlement Amount payments from Hayner Hoyt, the United States agrees that it shall pay to Relator by electronic funds transfer 17.5 percent of each such payment received under the Settlement Agreement as soon as feasible after receipt of the payment.

3.     Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Hayner Hoyt's full payment of the Settlement Amount, the United States releases each Defendant, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliates; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claims the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.     Subject to the exceptions in this Paragraph and in Paragraph 5 below, and conditioned upon Hayner Hoyt's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; affiliates; current or former owners, officers, directors, employees, servants and agents of any of the foregoing; and the successors and assigns of any and all of them from any civil or monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, or otherwise; provided, however, that nothing in this Agreement shall preclude Relator and his counsel (without bestowing new rights to his counsel) from seeking to recover his expenses, costs or attorneys' fees from Defendants pursuant to 31 U.S.C. § 3730(d), and nothing shall preclude Relator from pursuing any personal claim he has or may have against Defendants, including but not limited to, his retaliation claim against Defendants, pursuant to 31 U.S.C. § 3730(h), and the other personal causes of action set forth in the Amended Complaint.

12

5.      Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.      Any liability for failure to deliver goods or services due;

h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;  and

i.      Except as explicitly stated in this Agreement, any liability of individuals.

6.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

EXECUTION VERSION

Conditioned upon Relator's receipt of the payments described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.      Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

8.      Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

9.      In consideration of the execution of this Agreement on Relator's behalf, the partial dismissal of the Relator's Amended Complaint with prejudice as set forth in

14

Paragraph 12 below, and Relator's releases as set forth in Paragraph 4 above, Defendants release Relator and Relator's heirs, attorneys, agents, successors, and assigns from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted or may assert in the future against the Relator related to the Covered Conduct and the Relator's investigation and prosecution as to those causes of action brought on behalf of the United States. Provided, however, that nothing in this Agreement shall preclude Defendants from pursuing any other claims they have or may have against Relator or from asserting any and all defenses against Relator's remaining claims.

10.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement;

15

(5)     the payment Hayner Hoyt makes to the United States pursuant to this Agreement and any payments that any Defendant may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs, if any, will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.     Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants from the United States.  Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

16

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

11.     Except as provided in Paragraphs 3 and 4, above, this Agreement is intended to be for the benefit of the Parties only.

12.     Upon receipt of the full payment described in Paragraph 1, above, the Parties shall promptly sign and file a Joint Partial Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(l).  The Joint Partial Stipulation of Dismissal shall be (i) with prejudice as to the United States for the Covered Conduct, (ii) with prejudice as to the Relator for his claims for or related to the Covered Conduct, and (iii) with prejudice as to the Relator for all claims that the Relator has asserted, could have asserted, or may assert in the future for matters referenced or raised in the Civil Action on behalf of the United States.  All of Relator's personal claims and potential personal claims, including but not limited to Relator's retaliation claims pursuant to 31 U.S.C. § 3730(h), and the other personal causes of action set forth in the Amended Complaint, along with his and his counsel's right (without bestowing new rights to his counsel) to recover his expenses, costs or attorneys' fees from Defendants pursuant to 31 U.S.C. § 3730(d), will be excluded from the Joint Partial Stipulation of Dismissal.

13.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

15.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to

17

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19.    This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

20.    This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

21.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

22.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures and signatures in portable document format (.pdf) shall constitute acceptable, binding signatures for purposes of this Agreement.

*Signature Pages follow*

18

**EXECUTION VERSION**

**THE UNITED STATES OF AMERICA**

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated: March **11**, 2016

_____
ADAM J. KATZ
Assistant United States Attorney

**THE HAYNER HOYT CORPORATION,
LEMOYNE INTERIORS, DOYNER INC.,
GARY THURSTON, and JEREMY
THURSTON**

Dated: March _____, 2016

_____
GARY THURSTON

Dated: March _____, 2016

_____
JEREMY THURSTON

Dated: March _____, 2016

_____
MICHAEL J. SCHAENGOLD
SANFORD M. SAUNDERS
MELISSA P. PRUSOCK
Greenberg Traurig, LLP

Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

**EXECUTION VERSION**

**THE UNITED STATES OF AMERICA**

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated: March _____, 2016

_____
ADAM J. KATZ
Assistant United States Attorney

**THE HAYNER HOYT CORPORATION,
LEMOYNE INTERIORS, DOYNER INC.,
GARY THURSTON, and JEREMY
THURSTON**

Dated: March **11,** 2016

_____
GARY THURSTON

Dated: March _____, 2016

_____
JEREMY THURSTON

Dated: March _____, 2016

_____
MICHAEL J. SCHAENGOLD
SANFORD M. SAUNDERS
MELISSA P. PRUSOCK
Greenberg Traurig, LLP

19

Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

**THE UNITED STATES OF AMERICA**

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated: March _____, 2016

_____
ADAM J. KATZ
Assistant United States Attorney

**THE HAYNER HOYT CORPORATION,
LEMOYNE INTERIORS, DOYNER INC.,
GARY THURSTON, and JEREMY
THURSTON**

Dated: March _____, 2016

_____
GARY THURSTON

Dated: March _11_, 2016

_____
JEREMY THURSTON

Dated: March _____, 2016

_____
MICHAEL J. SCHAENGOLD
SANFORD M. SAUNDERS
MELISSA P. PRUSOCK
Greenberg Traurig, LLP

19

Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

**EXECUTION VERSION**

**THE UNITED STATES OF AMERICA**

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

Dated: March _____, 2016

_____
ADAM J. KATZ
Assistant United States Attorney

**THE HAYNER HOYT CORPORATION,
LEMOYNE INTERIORS, DOYNER INC.,
GARY THURSTON, and JEREMY
THURSTON**

Dated: March _____, 2016

_____
GARY THURSTON

Dated: March _____, 2016

_____
JEREMY THURSTON

Dated: March 11, 2016

_____
MICHAEL J. SCHAENGOLD
SANFORD M. SAUNDERS
MELISSA P. PRUSOCK
Greenberg Traurig, LLP

19

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

**RALPH BENNETT**

Dated: March _//_ , 2016

RALPH BENNETT

Dated: March _____, 2016

ANDREA L. MOSELEY
DiMuroGinsberg, P.C.

**229 CONSTRUCTORS, LLC**

Dated: March _//_ , 2016

RALPH BENNETT

Dated: March _____, 2016

ANDREA L. MOSELEY
DiMuroGinsberg, P.C.

Dated: March _____, 2016

STEVE BENEDICT

Dated: March _____, 2016

CLARK K. ERVIN
Squire Patton Boggs LLP

20
Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

**RALPH BENNETT**

Dated: March _____, 2016          _____
                                  RALPH BENNETT


Dated: March 11, 2016             _/S/ Andrea L. Moseley_____
                                  ANDREA L. MOSELEY
                                  DiMuroGinsberg, P.C.


**229 CONSTRUCTORS, LLC**

Dated: March _____, 2016          _____
                                  RALPH BENNETT


Dated: March 11, 2016             __/S/ Andrea L. Moseley_____
                                  ANDREA L. MOSELEY
                                  DiMuroGinsberg, P.C.


Dated: March 11, 2016             __/S/ Steve Benedict_____
                                  STEVE BENEDICT


Dated: March 11, 2016             __/S/ Clark K. Ervin_____
                                  CLARK K. ERVIN
                                  Squire Patton Boggs LLP

20

Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

**STEVE BENEDICT**


Dated: March 11, 2016          \_\_/S/ Steve Benedict_____
                                             STEVE BENEDICT


Dated: March 11, 2016          \_/S/ Clark K. Ervin_____
                                             CLARK K. ERVIN
                                             Squire Patton Boggs LLP


**THE RELATOR**


Dated: March \_\_\_\_\_, 2016          _____
                                             JOHN RUBAR


Dated: March \_\_\_\_\_, 2016          _____
                                             ROBERT W. SADOWSKI
                                             RAPHAEL KATZ
                                             Sadowski Katz LLP

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

STEVE BENEDICT

Dated: March _____, 2016

_____
STEVE BENEDICT

Dated: March _____, 2016

_____
CLARK K. ERVIN
Squire Patton Boggs LLP

THE RELATOR

Dated: March _11_, 2016

_____
JOHN RUBAR

Dated: March _____, 2016

_____
ROBERT W. SADOWSKI
RAPHAEL KATZ
Sadowski Katz LLP

Settlement Agreement:  *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)

EXECUTION VERSION

**STEVE BENEDICT**

Dated: March _____, 2016          _____
                                  STEVE BENEDICT

Dated: March _____, 2016          _____
                                  CLARK K. ERVIN
                                  Squire Patton Boggs LLP

**THE RELATOR**

Dated: March _____, 2016          _____
                                  JOHN RUBAR

Dated: March _11_, 2016           _____
                                  ROBERT W. SADOWSKI
                                  RAPHAEL KATZ
                                  Sadowski Katz LLP

21

Settlement Agreement: *United States ex rel. John Rubar v. The Hayner Hoyt Corporation, et al.*, Case No. 5:14-CV-830 (N.D.N.Y.)