**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, ex rel.
JOHN RUBAR,

|  |  |
|---|---|
| Plaintiff/Relator, | 5:14-CV-830 (GLS/CFH) |

v.

THE HAYNER HOYT CORPORATION,
JEREMY THURSTON, GARY THURSTON,
LEMOYNE INTERIORS, DOYNER INC.,
RALPH BENNETT, and 229 CONSTRUCTORS,
LLC,

Defendants.

**APPEARANCES:**                                      **OF COUNSEL**:

U.S. Department of Justice                         ADAM J. KATZ, ESQ.
445 Broadway
James T. Foley Courthouse
Albany, New York 12201
Attorneys for Government

Sadowski Katz LLP                                    RAPHAEL KATZ, ESQ.
11 Broadway, Ste. 615                             ROBERT W. SADOWSKI, ESQ.
New York, New York 10004
Attorneys for plaintiff/relator

Hancock Estabrook, LLP                           JOHN G. POWERS, ESQ.
1500 AXA Tower I                                     PAUL J. TUCK, ESQ.
100 Madison Street
Syracuse, New York 13202
Attorneys for plaintiff/relator

Greenberg Traurig, LLP, DC Office          MELISSA P. PRUSOCK, ESQ.
2101 L Street N.W.
Washington D.C., 20037
Attorneys for defendants/
Intervenor/Counterclaimant

Barclay Damon LLP                              JON P. DEVENDORF, ESQ.
One Park Place                                 KAYLA A. ARIAS, ESQ.
300 South State Street
Syracuse, New York 13202-2078
Attorneys for defendants/
Intervenor/Counterclaimant

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Presently pending[1] before the undersigned is plaintiff/relator John Rubar's Motion

to Compel, and defendants' cross motion for a protective order.  Dkt. Nos. 86, 89.[2]  Each

party opposed their adversaries' motions.  Dkt. Nos. 86, 89, 97.  Within their opposition to

plaintiff/relator's Motion to Compel, defendants cross-moved for a protective order

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26.  Dkt. No. 89.

In a Memorandum-Decision and Order dated January 25, 2018, the Court granted

in part and denied in part defendants' April 29, 2016 Motion to Dismiss, dismissing

(1) plaintiff's retaliation claim pursuant to the False Claims Act ("FCA") against defendants

Thurston, Bennet, Leymone, and 229 Constructors, LLC (4th Cause of Action);

(2) plaintiff's claim for negligent infliction of emotional distress against all defendants (7th

Cause of Action); and (3) plaintiff's claim for tortious interference with a contract against

all defendants (9th Cause of Action).  Dkt. No. 98.

---

[1] Also pending is plaintiff's letter motion to Compel Discovery and hold Non-party Dannible & McKee, LLP in contempt.  Dkt. No. 74.  That letter motion will be addressed in a separate decision.

[2] Unless otherwise indicated, this Court's citation to page numbers is to the pagination generated by CM/ECF in the page headers, not to the page numbers assigned by the parties.

The Court will discuss the facts relating to the underlying qui tam action only to the extent necessary to review the motions presently at issue. For a more extensive review of the facts and procedural history underlying this case, reference is made to the operative complaint and to this Court's January 25, 2018 Memorandum-Decision and Order. Dkt. Nos. 95, 98.

## II. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." FED. R. CIV. P. 26(b)(1). Further, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "Under this provision, the bounds of permissible discovery in a civil action are generally broad." T.H. by Shepherd v. City of Syracuse, 5:17-CV-1081 (GTS/DEP), 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018) (citing Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992)). "Significantly, these bounds are not cabined by rules governing admissibility of evidence at trial." Id. (citing Mohr v. Sec. Credit Servs. LLC, No. 14-CV-0982, 2016 WL 6638198, at *1 (N.D.N.Y. July 6, 2016.))

> The party seeking to compel discovery bears the initial burden
> of demonstrating relevance of the requested materials to a
> claim or defense in the case. This notwithstanding, courts
> place a strict burden on a party resisting discovery, as "[a]n objection to a document re
> specifics of the objection and how that objection relates to the documents being

demanded." "The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure."

Member Services, Inc. v. Security Mut. Life Ins., 3:06-CV-1164 (TJM/DEP), 2007 WL 2907520, at *4 (N.D.N.Y. Oct. 3, 2007) (internal citations omitted). To meet the initial burden, the moving party must "demonstrate at least the possibility of a nexus between the information sought and the claims or defenses of a party[,]" which is a "relatively low threshold." Id. (citing Condit v. Dunne, 225 F.R.D. 100, 106) (S.D.N.Y. 2004), quoting John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014)); see also Alaska Elec. Pension Fund v. Bank of Am. Corp., 14-CV-7126 (JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016) (noting that moving party must show "any possibility of relevance sufficient to compel discovery.") (quoting Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co., 14-CV-4394 (AJN) (BCM), 2016 WL 4613390, at *6-7 (S.D.N.Y. Aug. 31, 2016)).

"The specific proportionality factors to be considered are 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" Lapointe v. Target Corp., No. 16-CV-216 (GTS/CFH), 2017 WL 1397317, at *2 (N.D.N.Y. Mar. 6, 2017) (quoting FED. R. CIV. P. 26(b)(1)). Further, Fed. R. Civ. P. 26(c) provides that any party, for good cause, may seek a protective order to preclude or limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c). However, general objections as to

relevance, over breadth, or burden are insufficient to exclude discovery demands under this standard.  See North Shore-Long Island Jewish Health Systems, Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (quoting Lindsey v. Butler, No. 11 CIV. 9102, 2017 WL 4157362, at *2 (S.D.N.Y. Sept. 18, 2017)).  "'Rather, a party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded to the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive."  Id. (citing Lindsey, 2017 WL 4157362, at *3) (additional citation omitted).  However, the Second Circuit has cautioned that "according the discovery rules liberal treatment does not license opposing counsel to discover anything and everything."  In re Six Grand Jury Witnesses, 979 F.2d 939, 943 (2d Cir. 1992).

### III.  Arguments

Plaintiff contends that (1) defendants have failed to produce several categories of documents, (2) the documents that have been produced have not been provided in a proper format such that they can "determine whether all responsive documents have been produced," and (3) defendants are attempting to "pre-screen Plaintiff's depositions."  See generally Dkt. No. 86-1.  Defendants generally argue that they have properly: (1) produced electronic records responsive to the categories plaintiff claims to not have received, (2) objected to several categories of requests on the grounds of relevance or privilege, and (3) sought to limit depositions "for efficiency."  See generally Dkt. No. 89-

14.[3]  Defendants request a protective order be issued "[b]ased on the lack of relevance of the qui tam documents, among others, the financial burden associated with reviewing and producing these documents, and Mr. Rubar's non-existent need for the documents in light of the settlement agreement and other documents that have been produced[.]"  Id. at 6.[4]

## A. Format of Disclosures

Plaintiff provides that defendants' disclosures "are organized in manner that provide[s] no notice as to whether responsive materials have been produced on a request-by-request basis.  Defendants have failed to identify which Bates stamp range answers which specific document requests."  Dkt. No. 86-1 at 16.  Plaintiff contends that "Courts have determined that the appropriate remedy is to require the noncompliant party

---

[3]  Further, defendants contend that plaintiff has withheld documents based on relevancy objections and "has also yet to supplement his production to address certain of the deficiencies pointed out by Defendants with respect to Plaintiff's written objections."  Dkt. No. 89-14 at 11.  Defendants do not appear to seek the Court's intervention relating to any responses from plaintiff at this time, and instead suggest that they "intend to work with Plaintiff in good faith to address Defendants' disagreement with certain of Plaintiff's written responses," but note that "further motion practice may be necessary if Plaintiff intends to stand by certain of his objections.  Defendants only mention Plaintiff's discovery responses now to communicate issues with discovery responses (and potential disputes) are ongoing for both sides."  Id. at 11-12; see also Dkt. No. 89-1 at 11 ¶¶ 63-65.  Confusingly defendants' brief also requests that plaintiff be compelled to respond more fully to certain of their demands."  Id.; Dkt. No. 89-14 at 6.  However, because – beyond that sentence in the "preliminary statement" – there is no argument seeking to compel plaintiff to respond to certain demands and no argument within the cross-motion, and due to the conflicting statements in the attorney declaration, the Court is of the position that there is no argument to compel plaintiff to respond to discovery demands before the Court.

[4]  Defendants provide that, "[i]n January 2017, Mr. Rubar served three different sets of document demands on Defendants, asking for a total of 117 categories of documents, excluding subparts.  (Dkt. No. 86-3).  Specifically, Mr. Rubar served a set of demands on (1) Doyner, which contained 62 categories of document requests, with numerous subparts, (2) 229 Constructors, which contained 13 categories of document requests, with numerous subparts, and (3) Hayner Hoyt and the Thurstons, which contained 42 categories of document requests, with numerous subparts."  Dkt. No. 89-14 at 9.  After serving objections in February 2017, defendants "made an initial production of documents on March 10, 2017," and counsel for plaintiff and defendants "agreed that supplemental productions were necessary."  Id.  Defendants indicate that parties "exchanged letters about their respective positions relative to documents not produced by the other side" in July 2017 and sometime thereafter supplemented the production.  Id. at 10.

to provide requested documents with Bates stamp range organized according to each individual request," and seeks an Order directing defendants "to respond to each individual request by designating, by Bates number, which of the produced documents respond to which of Plaintiff's various document requests." Id. at 17.

Defendants contend that their formatting of the production is sufficient because, after defendants' initial production, "Defendants' counsel caused thousands of pages of collected electronic records to be loaded into a Relativity database." Dkt. No. 89-14 at 14. Thus, defendants argue that plaintiff "receiv[ed] documents in the format requested." Id. Defendants suggest that plaintiff unfairly "criticizes Defendants for not identifying by bates number which numbered document is responsive to which of Plaintiff's more than 100 requests." Id. Defendants argue that their production complies with Rule 34 as they produced the documents – "roughly 7700 pages" – "in the electronic form in which they were originally maintained, with the parent/child relationship between emails in a series, and emails with attachments, preserved." Id. at 15. Were defendants to identify "by bates number which document is responsive to which of Plaintiff's more than 100 requests," they argue they would be required to "undertake the expense of having documents reviewed and coded for production in a way most convenient for Plaintiff's counsel, and then re-reviewed once bates numbers are added to further convenience Plaintiff at Defendants' expense." Id. Because the "electronic records were produced as maintained, and in a reasonably usable form," defendants assert that they complied with Rule 34 and should not be compelled to undergo the expense or burden of producing the electronic records in this manner. Id.

Defendants cite <u>Rutherford v. PaloVerde Health Care District</u>, ED CV13-12470JAK (Spx), 2014 WL 12633523 (C.D. Ca. Apr. 25, 2014), from the Central District of California, wherein the Court declined to order the plaintiff, the nonmoving party, to produce electronic records by "identify[ing] by Bates number which documents are responsive to the requests," holding that Rule 34 requires only that electronically-stored discovery be produced as they are "ordinarily maintained." <u>Id.</u> at *4. The <u>Rutherford</u> Court further held that Rule 34 "does not require the producing party to identify in its written response to each document request exactly which page is responsive to each request." <u>Id.</u> Instead, the Court determined that Rule 34 "contains a much more general requirement: that the documents be organized and labeled to correspond to the requests' 'categories.'" <u>Id.</u>

This Court, addressing a similar issue, has noted that there does not appear to be any "bright line guidance concerning the level of detail required when a producing party has opted to produce documents as they are ordinarily maintained." <u>Pass & Seymour, Inc. v. Hubbell Inc.</u>, 255 F.R.D. 331, 336 (N.D.N.Y. 2008). In <u>Pass & Seymour</u>, the Court recounted holdings of other courts within the Circuit which held that a party complies with Rule 34 where there are general categories of documents. <u>Id.</u> The Court held that production of "405,367 pages of documents devoid of any index or table to help illuminate the organizational regime utilized by [plaintiff] falls short of meeting the obligations imposed under Rule 34(b)(2)." <u>Id.</u> Further, the Court held

> a party who in response to a discovery demand has chosen to produce documents as they are ordinarily maintained must do just that—produce the documents organized as they are maintained in the ordinary course of producing party's business, with at least some modicum of information regarding how they are ordinarily kept in order to allow the requesting

8

> party to make meaningful use of the documents. At a
> minimum, that means that the disclosing party should provide
> information about each document which ideally would include,
> in some fashion, the identity of the custodian or person from
> whom the documents were obtained, an indication of whether
> they are retained in hard copy or digital format, assurance that
> the documents have been produced in the order in which they
> are maintained, and a general description of the filing system
> from which they were recovered.

Id. at 337. The Court declined to direct the plaintiff to associate each document with its demand, but required the plaintiff "to provide some additional information regarding the organization of those documents in the ordinary course of business." Id. at 338.

Here, it is unclear whether defendants have produced the electronic discovery as it is ordinarily maintained. Defendants' brief claims both that the records "were produced as maintained, and in a reasonably usable form." Dkt. No. 89-14 at 15 (emphasis added). Plaintiff does not dispute that the discovery was produced in the manner it was ordinarily maintained. However, it is unclear whether the electronic documents – scanned into a "Relativity" database, which appears to be an e-discovery software program, can be considered produced in the manner in which they are ordinarily maintained. Regardless, even if defendants have produced the electronic discovery in the manner in which it was ordinarily maintained, it does not appear that the production was submitted with "some measure of explanation regarding the documents produced." Pass & Seymour, 255 F.R.D. at 336.

Whether defendants have produced the electronic discovery in the manner it was ordinarily maintained is a determination the Court cannot now make as it has neither the disputed discovery before it nor information about how the documents were maintained.

9

Yet, to be considered in compliance with Rule 34, defendants must, at a minimum, provide information to plaintiff about "how its documents are organized in the ordinary course of business and what steps the party took to search and produce the documents." Sky Medical Supply, CV 16-6383 (JFB) (AKT), 2016 WL 4703656, at *3 (E.D.N.Y. Sept. 7, 2016); Distefano v. Law Offices of Barbara H. Katsos, PC, No. CV 11-2893 (JS/AKT), 2013 WL 1339536, at *5 (E.D.N.Y. Mar. 29, 2013) ("The Court will therefore require Defendant Katsos to submit a detailed affidavit describing her filing system and the specific steps she took and the methods she utilized to collect documents responsive to Plaintiffs' requests.  In the alternative, Defendant Katsos may provide Plaintiffs' counsel with a specific response to each document demand providing the Bates numbers (or whatever identification method was used) of specific documents which respond to each individual document demand.").

> Thus, courts typically require that a party purporting to produce documents in the usual course of business provide "some modicum of information" regarding its filing system "which would ideally include the identity of the custodian or person from whom the documents were obtained, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered."

United States v. Bollinger Shipyards, Inc., 12-920, 2015 WL 13529562, at *4 (E.D. La. Apr. 13, 2015) (quoting Mizner Grand Condominium Ass'n Inc. v. Travelers Property Cas. Co. of Am., 270 F.R.D. 698, 701 (S.D. Fl. 2010)).  Where the party chooses to produce in a method other than as they are kept in the usual course of business, defendants must produce it "in a reasonably usable form or forms."  FED. R. CIV. P. 34(b)(2)(E).

Defendants maintain that they produced the electronically-stored data in a

"reasonably usable form" insofar as they provided a searchable database; however, it does not appear that there is any categorization of the documents such that plaintiffs could reasonably review the material. Dkt. No. 89-14 at 14-15. Referring to the "ordinarily maintained" option, this Court has noted, "if the system utilized by the producing party to organize and maintain the documents is so deficient as to undermine the usefulness of the production under this portion of the rule, the obligations imposed under Rule 34 may not have been met even where this procedure is followed." Pass & Seymour, 255 F.R.D. at 331, n.2 (citing Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D.Mass. 1976) ("a party 'may not excuse itself from compliance of Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition.'")). Here, the Court declines to order defendants to provide a Bates-stamped page range for each interrogatory response; however, for the discovery already provided to be considered "reasonably usable," this Court is of the opinion that there must be exist some method of identifying or categorizing for the materials produced for it to be considered responsive under Rule 34. The Court has before it very limited information about the form or content of the disclosures. However, plaintiff indicates that he has no way of determining to which interrogatories the disclosure responds, which defendants have produced the disclosure, as the disclosure lacks any organization. Although the Court is of the understanding that the discovery provided through the Relativity database is searchable, it does not appear that defendants provided any explanation of the contents of the disclosure, including how the documents

were kept as well as from whom they were taken.  Dkt. No. 89-1 at 7.  Thus, if plaintiff has

no way of knowing to which interrogatories the discovery is responsive nor how these

documents were originally kept, the disclosure cannot be said to be in compliance with

Rule 34.  Accordingly, for the electronic discovery already produced as of the date of this

Memorandum-Decision and Order, defendants must provide (1) an affidavit indicating

"how its documents are organized in the ordinary course of business and what steps the

party took to search and produce the documents," Sky Medical Supply, 2016 WL

4703656, at *3, (2)  a form of categorization for this discovery such as an appendix or

cover sheet which provides the categories of discovery contained in the disclosure (e.g.,:

indicating that certain sections contain e-mails from a certain defendant, another section

contains financial disclosures from a certain corporation, organization of documents by

date, organization of documents by defendant, etc.) and provides a method for identifying

where in the disclosures each category is located,[5] and (3) an affidavit which states to

which interrogatories the overall disclosure responds.[6]  Future disclosures, if produced as

it is ordinarily maintained, must (1) indicate how the documents are ordinarily maintained

as well as the steps taken to prepare the disclosure for discovery, and (2) contain a

system of categorization, discussed above, and (3) must make clear to plaintiff the

interrogatory numbers to which the overall disclosure responds.[7]  As for the discovery

---

[5] The identification need not be by a page number, but may be by section, date of disclosure, or other reasonable method.

[6]  The Court is not requiring specific identification as to which portions are responsive to which interrogatory; rather, a statement which lists all the interrogatory responses contained within the overall disclosure.

[7]  Plaintiff will also be held to this standard for all future disclosures.

already disclosed, defendants must provide such information within thirty days of entry of this Memorandum-Decision and Order.

Next, plaintiff points out that, "notwithstanding each of the named defendants claiming their own separate identity and defenses for purposes of liability, Defendants' counsel has not differentiated in its production which Defendant has produced which portion of the documents." Dkt. No. 96. Defendants have presented no argument to explain how associating each production with the defendant or defendants responding to the production would cause them any sizable burden. Indeed, plaintiff's request appears to be a minimal necessity for the disclosures to be considered in reasonably usable form. See Pass & Seymour, 225 F.R.D. at 331, n.2. Thus, in addition to the requirements set forth above, defendants are ordered to identify the defendant or defendants with whom each disclosure is associated — both those already disclosed and any future disclosures. For documents already disclosed, the identification must be made within thirty days of entry of this Memorandum-Decision and Order.

Finally, there exist a few apparently outstanding categories of documents that defendants indicate they have no objections to producing. First, defendants indicate that they "do not object to producing the form Purchase Order Requests, Reimbursement Requests, with submitted invoices and receipts, and corporate approvals, for the items that they claim Plaintiff misappropriated." Dkt. No. 89-1 at 8. However, defendants contend that "as evidenced by the Dannible & McKee Report, the volume of information relative to this request is substantial, and not easily producible in electronic form." Dkt. No. 89-1 at 8; Dkt. No. 89-14. Defendants contend that they have produced "the entire

13

Dannible & McKee Report, which includes several appendices, all of which detail Plaintiff's misappropriation." Dkt. No. 89-14 at 13. Defendants have filed what the undersigned understands to be the Dannible & McKee Report in support of their cross-motion. Dkt. No. 89-11. The Dannible & McKee Report "details the total fraudulent transactions by year and by vendor for each year 2008 through 2013, as well as Appendices A through K, which show the individual transaction amounts for each vendor." Id. The copy provided to the Court does not include purchase order requests, reimbursement requests with submitted invoices and receipts, and corporate approvals for items defendants allege plaintiff misappropriated; rather, this report appears to be a summary of expenses and invoices. It is unclear whether plaintiff was provided with a version that did include such documents.[8] To the extent defendants have not yet done so, defendants are ordered to produce any of the above-requested documents that are not otherwise contained in the Dannible & McKee Report or not otherwise turned over to plaintiff and must provide these documents in a reasonably usable form within thirty days of entry of this Memorandum-Decision and Order. FED. R. CIV. P. 34(a)(1)(A).

Next, defendants state they do not object to "producing documents responsive to Paragraphs 7, 8, 9, 17, 20, 21, 22, and 23 in the list of 24 categories of documents set forth on pages 6 through 8 of Plaintiff's Memorandum of Law[.]" Dkt. No. 89-1 at 8. Defendants indicate they have already produced documents responsive to paragraphs 7, 8, 9, and 17, and are

---

[8] Defendants' statements indicate that there may be more to the Dannible & McKee report that may have been produced to plaintiff, but not to the Court, as defendants provide " the volume of information relative to this request is substantial, and not easily producible in electronic form." Dkt. No. 89-1 at 8. The report provided to the Court is 46 pages long.

14

> continuing to search for documents responsive to the requests
> identified in Paragraphs 7, 8, 9, 17, 20, 21, 22, and 23 and
> intend to make a supplemental production to the extent
> additional documents are located within their possession
> responsive to these requests. The difficulty from Defendants'
> perspective is locating electronic records without a defined
> (and properly limited) universe of search terms.

Dkt. No. 89-1 at 8. Plaintiff argues that defendants "can't require Plaintiff to specify which documents that they requested remain extant when they themselves failed to make any effort to inform Plaintiff what they have produced." Dkt. No. 96 at 17.

The Court is unaware whether, since the filing of this motion, defendants have produced any further discovery responsive to these requests or other requests. Further, insofar as defendants suggest that they have experienced difficulty in producing electronic discovery without agreed-upon "search terms," the Court does not have before it any proposed terms nor an explanation whether any efforts have been taken by the parties to attempt to agree upon such terms. To the extent that any discovery requests remain outstanding relating to requests 7, 8, 9, 10, 17, 21, 22, and 23, the parties are ordered, within fourteen days of entry of this Memorandum-Decision and Order, to met and confer to agree upon search terms for defendants to use in determining whether any documents remain as to the aforementioned discovery demands. Once search terms are decided, defendants are ordered to perform such search, and if such documents are determined to exist as a result of this search, defendants must produce responsive documents within thirty days of this Memorandum-Decision and Order either in the form originally maintained with an explanation of how it is maintained or in a form reasonably usable.

15

## B.  Relevance

Plaintiff seeks production of several categories of documents that he contends is relevant to proving his FCA retaliation claim.  Plaintiff contends that proof of the underlying fraudulent scheme – and the breadth of the fraud – is essential to several of his claims:  (1) FCA retaliation;[9] (2) malicious prosecution, and (3) defamation.  Dkt. No. 86-1 at 7; 13-14.  Plaintiff argues that defendants will not suffer prejudice by producing the requested documents because they

> have already produced many of the documents Plaintiff seeks to the Government as part of their investigation as a plaintiff in this action, and moreover, some are even specifically referenced in the settlement agreement with the Government. It is noteworthy that some of the documents and communications that Defendants sent to the Government directly related to Plaintiff and Defendant's [sic] accusations against them.

Dkt. No. 86-1 at 26.  Finally, plaintiff contends that evidence of the "extreme degree" of fraudulent scheme is necessary because the "retaliation properly pleaded in this case is so extraordinary that it can only be explained in the context of the equally extreme underlying fraud."  Id. at 23.

By contrast, defendants contend that (1) documents relating to 220 Constructors, Ralph Bennett, and Steve Benedict are not relevant as the discovery sought was relevant only to plaintiff's first three causes of action, all of which have settled; (2) plaintiff "need not prove that Defendants committed a violation of the False Claims Act in order to succeed on his retaliation claim"; (3) the requested documents are cumulative of

---

[9]  As noted, the FCA retaliation claim remain against defendants Doyner and Hayner-Hoyt, but was dismissed as against defendants Bennet, Lemoyne, and 229.  Dkt. No. 95 at 24.

"statements" in the settlement agreement; (4) the requests are "disproportionate to the needs of the case and compelling Defendants to produce the requested documents impose a significant and undue burden on Defendants."; (5) the requested documents relating to 229 Constructors will not show an incentive to retaliate; and (6) documents relating to events occurring in 2012 and earlier are not relevant to plaintiff's 2014 termination. Dkt. No. 89-14 at 17-22. Defendants essentially contend that (1) FCA retaliation does not require a showing of the underlying fraud, and (2) even if plaintiff did need to demonstrate the underlying fraud, plaintiff can do so through the settlement agreement and documents already a part of the record. See generally Dkt. No. 89-14.

In reply, plaintiff contends that his requests are not cumulative of the settlement agreement with the government as the settlement

> was not an exhaustive report of Defendants' fraud, nor a summary of the contents of the documents evidencing the fraud. Rather, it merely generally described some of Defendants' illegal activity and named some documents that served as examples of the evidence supporting that fraud. Thus, such document requests are axiomatically not cumulative. Incredibly, Defendants refuse to produce even the documents cited in the settlement agreement, let alone the other requested documents.

Dkt. No. 96 at 4. Plaintiff also contends that documents defendants provided to the government "are not routinely available to the Relator via request to the Government or subpoena." Id. at 13 (citing 28 C.F.R. § 16.21 et seq.). Finally, plaintiff reiterates his belief that he must prove FCA retaliation, and can do so through circumstantial evidence. Id. at 4. Further, plaintiff argues proof of the underlying fraud is relevant to defendant's incentive to retaliate. Id. at 9.

17

The Court will first address whether plaintiff, as movant, has met his burden of demonstrating that the discovery he seeks is "both relevant and proportional in accordance with Rule 26's over-arching relevancy requirement." Neogenix Oncology, Inc. v. Gordon, CV 14-4427 (JFB)(AKT), 2017 WL 1207558, at *10 (E.D.N.Y. Mar. 21, 2017). Plaintiff contends that in order to prove he engaged in protected conduct under the FCA, he must demonstrate objective and subjective elements by showing that "he had a sincere and objectively reasonable basis for concluding that Defendants were participating in a fraudulent scheme." Dkt. No. 86-1 at 18. As this Court has previously held in this case, "[g]enerally, to set forth a retaliation claim under this section, a relator must show that "'(1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity.'" United States ex rel. Rubar v. Hayner Hoyt Corp., 306 F. Supp.3d 478, 484 (N.D.N.Y. 2018) (quoting United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc., 865 F.3d 71, 95 (2d Cir. 2017)). To prove protected conduct, "'an employee's actions must have been in furtherance of an action under the FCA, that is, an employee must have been investigating matters that were calculated, or reasonably could have lead [sic], to a viable FCA action.'" United States ex rel. Sasaki v. N.Y. Univ. Med. Ctr., No. 05 Civ. 6163, 2012 WL 220219, at *12 (S.D.N.Y. Jan. 25, 2012) (quoting Gargia v. Aspira of New York, No. 07 Civ. 5600 (PKC), 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011)). "However, a relator is required to show a 'good faith basis', or 'objectively reasonable basis', for believing that he or she was investigating matters in support of a viable FCA case." Id. at *12 (citing Hoyte v. Am. Nat'l Red Cross, 518 F.3d

18

61, 87 (D.C. Cir. 2008)). Further, for a plaintiff/relator "to prove that he engaged in conduct protected under the statute, he need not prevail on his underlying FCA claims, but [must] simply demonstrate that he 'had been investigating matters that were calculated, or reasonably could have [led], to a viable FCA action.'" Id. (quoting United States ex rel. Sasaki, 2012 WL 220219, at *12); U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ., 451 F. Supp.2d 613 (S.D.N.Y. 2006) (holding that an "employee's activities may be protected even where an FCA suit has not been filed. But the conduct must have been in furtherance of an FCA action.") (internal citations omitted).

Plaintiff argues that proof of the underlying fraud is relevant to his FCA retaliation claim because, to prove he was engaged in a protected activity – which defendant disputes – plaintiff must show that he had a good faith and objectively reasonable basis for believing that defendants were participating in a fraudulent scheme. Dkt. No. 86-1 at 20-21. Further, plaintiff contends that documents that would show his involvement in the whistleblowing are relevant because they may show that defendants were aware of his activity, and, thus, had a motive, and that his termination was pretextual. Id. at 18-22. Finally, in a closely related argument, plaintiff contends that evidence of the magnitude of the fraudulent scheme is necessary to explain the "extreme degree" of retaliation. Id. at 23-24.

First, the Court finds that plaintiff has met his burden by demonstrating that evidence of the fraudulent scheme is relevant to his FCA retaliation claim as discovery may reveal that defendants were aware of plaintiff's whistleblowing activities such that his termination was pretextual. Second, as an FCA retaliation claim requires plaintiff to prove

19

that he was engaging in a protected activity, Rubar, 306 F. Supp.3d at 484, evidence

relating to the potentially fraudulent transactions plaintiff encountered or refused to

participate in may serve to demonstrate that good-faith basis.  Finally, plaintiff has further

demonstrated that the breadth or significance of the alleged fraud may prove relevant to

attempting to showing the significant retaliatory measures defendants took.  Defendants

dispute that plaintiff has engaged in a protected activity under the statue,  Dkt. No. 89-14

at 21; thus, they dispute that plaintiff had a "good faith" or "objectively reasonable" basis

for believing that he was engaging in conduct in support of a viable FCA claim.  To prove

the disputed protected conduct prong, plaintiff must be permitted to discover evidence

relating to the underlying fraud to attempt to demonstrate this good faith basis.  United

States ex rel. Sasaki, 2012 WL 220219, at *12.  As this Court has stated, discovery of this

material does not mean that this material will necessarily be admitted.  FED. R. CIV. P.

26(b)(1).  As plaintiff has "met the relatively modest burden of demonstrating potential

relevance of the requested information."  T.H. by Shepherd, 2018 WL 3738945, at *5, "the

burden now shifts to defendants to establish that the requests lack relevance, 'despite the

broad and liberal construction afforded to the federal discovery rules.'"  Id. (quoting John

Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184 (S.D.N.Y. 2014)).

Defendants argue that because proof of a false claims violation (§3729) is not an

element of a FCA retaliation (§3730(h)) claim, plaintiff does not need to show that

defendants violated the FCA to succeed on his retaliation claim.  Dkt. No. 89-14 at 17

(citing Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson,

545 U.S. 409, 416 n.1 (2005)).  As evidenced by parties' briefs, there is little case law

addressing, in the discovery context, the specific question of the relevance of the fraudulent scheme underlying a FCA retaliation claim to the issue of motive or pretext. Defendants bring to the Court's attention <u>Dilback v. General Elec. Co.</u>, No. 4:00-CV-222, 2008 WL 4372901 (W.D. KY Sept. 22, 2008). There, the plaintiff sought discovery regarding the underlying qui tam case, arguing (1) information related to the underlying purported fraud against the United States was relevant "to prove that he was investigating and filed a qui tam claim related to a 'viable' FCA action," and (2) proof of the underlying fraud is relevant "because the Defendant has asserted a non-retaliatory reason as to why the Plaintiff was terminated, he should be permitted to use evidence of fraud to prove that the stated reason is merely pretext. If the accusations are true . . . then the Defendant would have more of a motive to retaliate against the Plaintiff." <u>Id.</u> at *4. The Court denied the plaintiff's motion seeking discovery relating to the underlying fraud as it related to the viability of the FCA claim as the standard did not require the plaintiff "to have investigated an actual fraud against the United States in order to have engaged in activity that could reasonably have led to a 'viable FCA action[,]' instead, the plaintiff only needed to show – under Sixth Circuit precedent – that her actions were "reasonably connected to the FCA" and her actions involved "exposing fraud," even if the accused did not actually violate the FCA. <u>Id.</u> Thus, the Court held that "evidence related to the alleged fraud is not discoverable for those purposes." <u>Id.</u>

However, the <u>Dilback</u> Court permitted discovery relating to the alleged underlying fraud in order to attempt to prove the defendant's motive to retaliate. The Court determined that information about the underlying fraud may be relevant to motive in

21

plaintiff's retaliation claim, specifically as to pretext, as the plaintiff would be required to show that a retaliatory reason motivated the employer or that the defendants' reason for the adverse employment decision was pretext. 2008 WL 4372901, at *4-5. Thus, the Court held that if the plaintiff could demonstrate that the documents "reveal the existence of false claims on the part of the Defendant, then [sic] such evidence may be probative of the Defendant's motivation." The Court agrees with the Dilback court's rationale. Plaintiff contends that to show he was engaged in protected conduct, he "must show that he had a sincere and objectively reasonable basis for concluding that Defendants were participating in a fraudulent scheme." Dkt. No. 86-1 at 18. Thus, plaintiff argues that he must be able to present evidence that the underlying fraudulent scheme occurred. Id. The Court is not concluding that the underlying fraudulent scheme is an element of a FCA retaliation claim; however, the Court does agree with plaintiff that, to show he was engaged in protected activity, he must be able to offer evidence "that a reasonable person would believe that participating in Defendants' scheme would violate the FCA." Dkt. No. 86-1. Although defendants urge the Court to find Dilback distinguishable, the plaintiff in Dilback was apparently seeking to demonstrate the validity of the underlying qui tam claim. Plaintiff does not argue that he is attempting to prove the existence of the fraud to demonstrate its validity[10]; rather, that he had a good faith, objectively reasonable belief that defendants were engaging in fraud on the government – something defendants dispute. Here, defendants have failed to meet their burden of demonstrating that plaintiff's requests are

---

[10] Were plaintiff attempting to demonstrate the validity of the FCA claim, the undersigned would be likely to find that such was not relevant to the FCA retaliation claim. However, the undersigned is of the opinion that plaintiff is not seeking discovery for that purpose.

irrelevant to the FCA retaliation claim.

Defendants argue that Dilback's holding – insofar as the Court held that evidence of the underlying fraud was relevant to plaintiff's retaliation claim in order to show motive – is also distinguishable because, unlike in Dilback, plaintiff has access to evidence that could show what he seeks. Defendants contend that plaintiff has not demonstrated why his discovery requests for evidence relating to the underlying qui tam investigation are not "entirely duplicative of the statements contained in the Settlement Agreement." Dkt. No. 89-14 at 17-23. However, this does not appear to be a situation where the settlement agreement alone would suffice to assist plaintiff in demonstrating motive and pretext. First, plaintiff contends that he does not have access to the documents cited in the settlement agreement. Dkt. No. 96 at 10. Second, plaintiff argues that the settlement agreement is a summary of the fraud, and does not set forth specifics.

The Court has reviewed the settlement agreement and agrees with plaintiff that it merely sets forth summary of the fraudulent scheme. As plaintiff must show he had a good faith basis in believing defendant was engaged in fraud on the government, the settlement document alone does not necessarily demonstrate that plaintiff had a good faith basis for believing the fraud to be occurring nor does it explain plaintiff's involvement. Although the defendants have settled with the United States over alleged violations of the FCA, because the settlement agreement does not demonstrate plaintiff's direct role nor detail the full scale of the alleged fraudulent scheme, it does not necessarily follow that plaintiff can prove protected conduct merely by showing the settlement agreement.

Thus, the undersigned declines conclude that plaintiff should be entitled to use only

the settlement agreement to demonstrate the underlying fraud because plaintiff has met his burden of demonstrating that the underlying fraudulent scheme is relevant to his FCA retaliation claim and the settlement agreement does not set forth plaintiff's specific involvement in whistleblowing which he may need to present to demonstrate motive and pretext. Accordingly, plaintiff has proven relevant the documents cited within the settlement agreement along with material likely to demonstrate defendants' knowledge of plaintiff's whistleblowing activities and the extent of the fraudulent activity in order to establish pretext and motive. Thus, the Court must conclude whether plaintiff's claims are proportional to his need, or whether defendants have demonstrated good cause for a protective order limiting or narrowing these demands. FED. R. CIV. P. 26(c)(1).

## B. Proportional

The Court has determined that plaintiff has met his burden of demonstrating relevance of discovery relating to the underlying fraud; however, it still must be determined whether his discovery requests are proportional to the needs of the case. See Neogenix, 2017 WL 1207558, at *7 (quoting Rule 26 Advisory Committee Notes to 2015 Amendments). In addition to setting forth arguments over relevance, in support of their motion for a protective order, defendants argue that plaintiff's requests are either overbroad or burdensome. Dkt. No. 89-14.

"Where . . the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." Ruggles v. WellPoint, Inc., 1:08-CV-201 (LEK/RFT), 2010 WL 11570681, at *4 (N.D.N.Y. Dec. 28, 2010) (quoting

Rodriguez v. Selsky, 1:08-CV-201 (LEK/RFT), 2008 WL 2778879, at *2 (N.D.N.Y. Jul. 14, 2008)); Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2nd Cir. 1992) (citations omitted) (same).   This rule is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." Dabney v. Maddock, No. 10-CV-0519 (GTS/DEP), 2011 WL 7479164, at *11 (N.D.N.Y. Nov. 29, 2011) (collecting cases).  Beyond the relevance arguments, the crux of defendants' argument is that plaintiff's demands are overbroad and burdensome such that it will be both time-consuming and expensive for defendants to respond.  Dkt. No. 89-14 at 20 (contending that many of plaintiff's requests are "disproportionate to the needs of the case[.]").   Defendants have also argued that they have already produced several documents responsive to plaintiff's demands.[11]  Plaintiff contends that defendants have failed to meet their burden of demonstrating good cause because they have not "specif[ied] the harm that they would suffer in responding to Plaintiff's document requests nor do they identify which documents they seek to protect or provide any document-specific justifications."  Dkt. No. 97 at 1; Dkt. No. 96 at 10.

Although it is well-settled that "liberal treatment" of discovery rules "does not license opposing counsel to discover anything and everything[,]" In re Six Grand Jury Witnesses, 979 F.2d at 943, here, defendants have failed to meet their burden as they have not shown how "each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." North Shore-Long Island Jewish Health Systems, Inc., 325

---

[11]  Arguments relating to material defendants allege to have already disclosed will be addressed below.  Infra at 27-32.

F.R.D. at 48.  As plaintiff points out, defendants' counsel indicates that responding to plaintiff's many categories of discovery would "create an unreasonable burden on Defendants."  Dkt. No. 89-1 at 9.  However, beyond identifying one specific request that defendants claim to be unduly burdensome,[12] defendants do not explain how the other requests are burdensome beyond referring to the sheer number of demands.  See, e.g., In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp.2d 220, 222 (S.D.N.Y. 2006)(holding that a party establishes "good cause" by showing that a "clearly defined, specific and serious injury" will occur in the absence of a protective order).  As also highlighted by plaintiff, defendants indicate to the Court that they have access to a software program to search digital files or produce electronic discovery.  Dkt. No. 96 at 11.  Thus, as least as it relates to electronic requests, it would not appear that needing to search a significant number of files would be unusually burdensome if a keyword search or related feature is available.  The Court acknowledges that plaintiff has made several demands of defendants; however, in the absence of demonstrating precisely how each interrogatory is "overly broad, burdensome or oppressive," they have not met their burden of showing entitlement to a protective order.  Cf. Trafalgar Power, Inc. v. Algonquin Power Corp., Inc., 5:99-CV-1238 (DNH/DEP), 2007 WL 9710051, at *4 (N.D.N.Y. Sept. 13, 2007).  This Court has "broad discretion" to "decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).  Insofar as defendants suggest that the discovery requests "effectively require[] them to 're-

_____

[12]"By way of example, there are more than 20,000 pages of documents containing the "@220constructors.com" domain name that Defendants would need to review just to respond to certain of Plaintiff's requests."  Dkt. No. 89-14 at 10.

litigate the false claims dispute," Dkt. No. 89-14, the Court is fully capable of making sure that such does not occur and will require strict compliance with the rules of civil procedure and evidence should this case reach trial.  As this Court has repeatedly reiterated, even where discovery is significant in its breadth, it does not follow that every document will be considered admissible at trial. FED. R. CIV. P. 26(b)(1).

Accordingly, insofar as defendants seek a protective order based on general arguments that plaintiff's discovery requests are overbroad or unduly burdensome, defendants' request is denied.  Insofar as plaintiff "seeks a conditional order of preclusion" barring defendants from making certain arguments or raising certain defenses, Dkt. No. 96 at 14, that request is denied, at this time, to permit defendants an opportunity to comply with discovery following the issuance of this Memorandum-Decision and Order.

## C.  Miscellaneous Requests

The parties discuss several specific requests that plaintiff alleges defendants have not responded to, to which defendants argue (1) they have responded, (2) they are in the process of responding, (3) that no such documents exist, and (4) they are unable to respond due to a lack of workable parameters.  Dkt. No. 89-14 at 12-15, 26-28.  The Court addresses these various arguments or objections below.

### 1. Discovery relating to 229 Constructors

Insofar as plaintiff requests documents relating to 229 Constructors and its owners as it relates to his retaliation claims, defendants contend that they "are not in possession

of a single document showing that any of the defendants or their representatives had any knowledge about Mr. Rubar's purported engagement in protected activity (which Defendants strongly doubt even occurred)." Dkt. No. 89-14 at 21. Further, defendants reiterate their argument that any information plaintiff seeks to obtain to prove motive is "entirely duplicative of the statements contained in the Settlement Agreement[.]" Dkt. No. 89-14 at 21. Finally, defendant argues that there is a lack of temporal proximity between "when Plaintiff purportedly engaged in protected activity and when plaintiff was terminated (roughly 19 months later[.])"

Initially, the Court rejects defendants' argument relating to sufficiency of the settlement agreement for the reasons set forth above. Plaintiff appears to argue that defendants may be disingenuous about performing diligent searches for the requested materials as they made similar claims – that they "'do not believe they are in possession of'" – when responding to other categories of discovery demands, but plaintiff has since learned such documents do exist from nonparties. Dkt. No. 96 at 7-8. Thus, plaintiff argues that it is possible that defendants also have relevant documents as to this request. Id. at 8. The Court finds that a reasonable solution to plaintiff's concern is for defendants to perform a thorough search for such documents and, if any are discovered, provide any documents to plaintiff, and if none are discovered, provide to plaintiff an affidavit indicating that they have diligently searched and have found no responsive documents or communications. Accordingly, defendants are ordered, within thirty days of entry of this Memorandum-Decision and Order, to complete a thorough search to ascertain whether they are in possession of any documents suggesting any defendants were aware of

plaintiff's attempt to uncover or report fraud on the government, and provide any relevant results to plaintiff.  If defendants complete such search and determine no such documents exist, within thirty days of entry of this Memorandum-Decision and Order, defendants must submit to plaintiff an affidavit indicating that they have diligently searched and have found no such documents and are not aware of the existence of any such documents.  Defendants are advised that if they fail to sufficiency and diligently complete such search and provide any relevant discovery from that search if found, should it be demonstrated that such affidavit is untrue, the Court will consider any application for sanctions or other consequences.

## 2.  Post-termination evidence

Next, insofar as defendant contends that post-termination documents are not relevant because the alleged protected activity was said to have occurred 19 months before plaintiff's termination, the Court disagrees that such a gap renders these documents not relevant for the purposes of discovery.  Plaintiff suggests that there was ongoing retaliation which culminated in termination.  That plaintiff's termination was 19 months after the alleged protected activity does not automatically render the post-termination documents irrelevant to proving pretext.  Moreover, discovery of the documents does not mean that such documents will be admissible, and the Court declines, at this time, to make an admissibility decision.  To the extent defendants believe that activities that occurred 19 months before plaintiff's termination are irrelevant to plaintiff's retaliation claim, such an argument would more properly be made before the

District Judge in a properly-filed dispositive motion or a motion in limine. As this Court determines that such documents, should they exist, may be relevant to plaintiff's retaliation claim, within thirty days of entry of this Memorandum-Decision and Order, defendants must either produce such documents or provide an affidavit confirming that defendants performed a thorough search and found no documents or communications.

Defendants contend that they have produced "several pages of documents created after Plaintiff's termination." Dkt. No. 89-14 at 25. They argue that they have "never taken the blanket position that all documents created after Plaintiff's termination are irrelevant to the claims or defenses in this case," but contend that because "Plaintiff does not identify which categories of post-termination documents he believes Defendants have withheld on the basis of a relevancy objection, Defendants are unable to address this argument further." Id. In response, plaintiff states that defendants' form of production is the reason why they are having difficulty identifying the demands to which they have responded, and that "[d]efendants can't require Plaintiff to specify which documents that they requested remain extant when they themselves failed to make any effort to inform Plaintiff what they have produced." Dkt, No. 96 at 17.

If the parties cannot identify the documents they seek withheld or protected, the Court certainly is unable to order these documents to be produced or protected. The Court is further unaware of the specific documents defendants have overturned that they believe are responsive to this request. However, as this Court has ordered parties to meet and confer to agree to search terms for electronic discovery and has further ordered defendants to indicate the interrogatories to which they have already responded, supra at

12-15, compliance with that portion of this Court's Memorandum-Decision and Order may solve defendants' problem by assisting parties in identifying which documents have been disclosed or withheld.  However, to the extent that, compliance with this Order does not elucidate for parties the specific document demands that remain pending, parties are ordered to meet and confer, within fourteen days of entry of this Memorandum-Decision and Order, to discern any discovery that this Court has deemed relevant that may remain undisclosed.[13]  If it is determined that any outstanding discovery, which this Court has deemed relevant, remains, defendants are to produce such discovery to plaintiff within thirty (30) days following entry of this Memorandum-Decision and Order.

### 3. Requests Related to Defamation/Retaliation

Plaintiff contends that defendants have failed to produce requests relevant to his defamation and retaliation claims.  Dkt. No. 86-1 at 14.  Plaintiff first contends that he has requested copies of disparaging statements made about plaintiff in the construction industry.  Dkt. No. 86-1 at 14 (citing HH Doc. Request 4, 5 [Dkt. No. 86-3 at 3]).  Further, plaintiff contends that defendants "have objected to providing any material related to their communications with the Syracuse Police Department, specifically with Detective Falvo, which is "essential to Plaintiff's malicious prosecution claim."  Id. (citing HH Doc. Request 3 [Dkt. No. 86-3 at 3]).  Further, plaintiff argues that defendants' "representations to the police regarding Rubar and/or the alleged theft are essential to establishing malice and/or

---

[13]  Insofar as plaintiff requests a Bates range, the Court, for the reasons set forth above, decline to order defendants to provide a Bates range, but do require past and future requests be provided with an indication of the interrogatories/demands to which they are responsive.

are evidence of retaliatory intent." Id.

Defendants indicate that they "do not believe they possess any documents showing 'disparaging statements' made about Mr. Rubar within the construction industry." Dkt. No. 96 at 6. Defendants do not set forth any relevant argument as it relates to plaintiff's request for communication between Gary Thurston and the City of Syracuse Police Department. However, in defendants' initial objections to this request, they objected on the grounds that

> it is over-broad, vague, and ambiguous, and, as a result, imposes undue burden and expense in violation of the Federal Rules of Civil Procedure. Haynor Hoyt objects to this Request to the extent that it seeks documents subject to the attorney-client privilege or which constitute attorney work product, pertain to materials prepared in anticipation of or as a result of litigation, or are otherwise immune from discovery by the common interest privilege or otherwise applicable privilege or immunity. Subject to and without waiving the General Objections above, Haynor Hoyt will produce relevant, non-privileged documents responsive to this Request, to the extent such documents exist and are within Hayner Hoyt's possession, custody, and control upon the parties' negotiation and execution of a Protective Order.

Dkt. No. 86-4 at 6.

Plaintiff, in his reply, produces evidence that may suggest that communications that are "disparaging" to plaintiff in the construction industry do exist. Plaintiff provides a purported copy of an e-mail "sent from gthurston@haynerhoyt.com, authored by Mr. Thurston, and containing his company title and contact information" and "obtain[ed] . . . through a nonparty to this lawsuit" which "suggests that the representation that Defendants 'do not believe' they possess such documents is unworthy of belief." Dkt. No. 96. The Court declines, at this time, to make an evidentiary determination or potentially

review the validity of this e-mail. However, as plaintiff has made the threshold demonstration that any such documents, if in existence, may be relevant to his retaliation or malicious prosecution claims, defendant Hayner Hoyt must undergo a diligent search of their records, including any electronic communication, to determine whether there exist responsive documents/communications. If such documents exist, defendants must provide such documents to plaintiff within thirty days of entry of this Memorandum-Decision and Order.[14] If no such documents exist, Hayner Hoyt must, within thirty days of this Memorandum-Decision and Order, provide to plaintiff an affidavit indicating that defendant underwent a diligent search and has found no such responsive documents.

As for plaintiff's request relating to Hayner Hoyt's communications with the City of Syracuse Police Department, as plaintiff has met his minimum threshold showing that such documents, to the extent they exist, are likely relevant to his defamation and/or malicious prosecution claim, and defendant has not presented an argument demonstrating that these documents are overbroad, vague, ambiguous, or over burdensome; protected by privilege; or not in defendants' control, defendants are ordered to produce any such documents, if they exist. Defendants must either produce such documents within thirty days or provide an affidavit affirming that defendants underwent a diligent search and found no responsive documents.

_____

[14] The undersigned notes that the objections indicate that defendants would turn over responsive documents subject to a protective order. The undersigned acknowledges that defendants include, as an exhibit to their cross-motion, what appears to be a "Draft Protective Order." Dkt. No. 89-5. It is not clear to the Court whether parties have executed this protective order or if this protective order was intended for the request relating to communications with the City of Syracuse police Department.

### D. Potentially Privileged Information

Plaintiff requests documents from law firms that have represented defendants. Plaintiff requests "[i]temized billing statements and time records for any Lynn Law Firm representation concerning John Rubar" as "[r]esponsive documents will show the timing of when Defendants began their campaign of retaliation against Plaintiff and may hep negate Defendants' counter-claims." Dkt. No. 96-2 at 2. Plaintiff also requests "[a]ll communications between DiMuroGinsberg P.C., Greenberg Traurig, LLP, and Squire Patton Boggs LLP that mention or reference John Rubar or the qui tam investigation." Id. at 1. Plaintiff contends that such documents 'will contain information relevant to the underlying fraud because the communications are in response to the Government investigation" and

> [w]ill also contain information relevant to the ongoing retaliation and retaliatory animus to the extent those communications concerned Plaintiff and/or information about Plaintiff that was later conveyed to the Government. These documents may reveal Defendants' knowledge that John Rubar was the Relator and they may contain statements by Defendants challenging his credibility.

Dkt. No. 96-2 at 1-2.

Addressing first the request relating to Lynn Law Firm, defendants contend that they "have already responded to this request as has the Lynn Law Firm" Dkt., No. 89-14 at 26. Defendants further contend that "descriptions of the services rendered are privileged," and, moreover, that Lynn Law Firm "is already on record indicating that the firm was engaged by Hayner Hoyt prior to the firm's representation concerning John Rubar, which was commenced after Mr. Rubar was terminated." Id. at 26-27 (citing Dkt.

No. 89-12).  The Court is unaware of the degree to which defendants have responded to this request, if at all.  The Court does not have before it a privilege log, and, thus, is unable to ascertain whether defendants have provided a detailed statement of these documents.   It is well-settled that not every communication between an attorney and client is protected by the attorney-client privilege.  Moreover, although "[t]ime records generally have been held to be protected from disclosure by the attorney-client privilege as they may 'reveal litigation strategy or the specific nature of the service provided,' . . . 'attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered.'" Mohr v. Security Credit Services, LLC, 141 F. Supp.3d 179, 185 (quoting DiBella v. Hopkins, 403 F.3d 102, 120 (2d Cir. 2005) (internal citation omitted)); Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 23 (N.D.N.Y. 2002) ("Although the federal rule is less definitive [than the New York State standard], the court concludes that attorney billing statements are subject to the attorney-client privilege to the extent that they reveal more than client identity and fee information.").  Thus, defendants should be able to provide, without revealing attorney-client privileged information, billing statements and time records relating to Lynn Law Firm's representation insofar as it involved plaintiff, redacted, where needed, to the extent they reveal anything beyond client identity and fee information.  However, plaintiff has not, at this time, demonstrated that itemized billing statements and time records from Lynn Law Firm are proportional to the apparent need to know when Lynn Law Firm began to represent defendants relating to John Rubar.  Instead, plaintiff has shown merely that knowledge of when Lynn Law Firm began its representation of defendants regarding

matters related to plaintiff is relevant to his claims in this case. Although defendants

contend that Lynn Law Firm "is already on the record indicating that the firm was engaged

by Hayner Hoyt priot to the firm's representation concerning John Rubar, which was

commenced after Mr. Rubar was terminated," it is entirely unclear to which "record"

statement defendants are referring. Dkt. No. 89-14 at 26. The letter included with the

cross-motion does not answer the question of when the representation as it relates to

plaintiff began. Dkt. No. 89-12. Accordingly, defendants must provide an affidavit

indicating when any Lynn Law Firm representation relating to Rubar began and ended

within thirty days of entry of this Memorandum-Decision and Order.

Next, plaintiff requests communications between Lynn Law Firm and Louis Falvo,

Syracuse Police Department, Onondaga County District Attorney's Office, Travelers or

Charter Oak Insurance Company, Syracuse Post Standard or "any other media outlet,"

Dannible & McKee, "GPS vendor," or "computer forensics vendor." Dkt. No. 96-2 at 8

(Lynn Law Firm Request 8). Defendants do not explicitly respond to this request in their

cross motion. However, to the extent defendants intend to imply that these requests are

privileged, the Court notes that communications between nonparties and Lynn Law Firm

may not be protected by the attorney-client privilege. See generally U.S. v. Ackert, 169

F.3d 136 (2d Cir. 1999) ("[A] communication between an attorney and a third party does

not become shielded by the attorney-client privilege solely because the communication

proves important to the attorney's ability to represent the client.") (citing Hickman v. Taylor,

329 U.S. 495 (1947)); Colton v. United States, 306 F.2d 633, 640 (2d Cir. 1962) ("We

have already noted that papers received from third parties are unprivileged and no theory

has been presented on which communications from an attorney to a third party are privileged.")); but see In re Grand Jury Proceeding, 79 F.App'x 476, 477 (2d Cir. 2003) (summary order) ("Generally, the privilege applies only to communications between a client and its lawyer, not between the client or its lawyer and third parties. Under limited circumstances, however, the attorney-client privilege may extend to communications with a third party, such as an accountant or a private investigator hired to assist in the rendition of legal services. Like any communications protected by the attorney-client privilege, however, communication with such third-party agents is only protected if it is 'made in confidence for the purpose of obtaining legal advice from the lawyer.'") (internal citations omitted). Thus, the Court cannot make a determination, when the communications are not before it, whether they are privileged. Thus, defendants are ordered to either produce any such documents, or, if they believe them to be protected by the attorney-client privilege or other privilege, provide to plaintiff a detailed privilege log indicating their rationale for asserting the privilege. Such disclosures or privilege log must be provided to plaintiff within thirty days of entry of this Memorandum-Decision and Order.

Responding in a footnote to the request relating to DiMuroGinsberg, P.C., Greenberg Traurig, LLP or Squire Patton Boggs, LLP, defendants contend that plaintiff's request "not only seeks information that is irrelevant, cumulative, and burdensome to collect, as discussed above, but it also seeks information that is entirely privileged." Dkt. No. 89-15 at 26 n.6. To the extent plaintiff is seeking communications from these law firms that involves their representation of defendants, defendants may be correct that communications involving their representation of defendants relating to plaintiff or the qui

tam investigation would be protected by the attorney-client and/or work-product privileges. Unlike with Lynn Law Firm, plaintiff does not appear to seek time records that may not be protected, but broadly seeks to recover communications. Although the Court does not have specific communications before it to be able to assess their privilege, to the extent that the communications involve the giving or receiving of legal advice, it would appear those communications are privileged. Thus, although defendants' summary footnote does not demonstrate that producing any such documents would be "irrelevant, cumulative, and burdensome to collect," because such communications may be privileged out of an abundance of caution, the Court denies plaintiff's request, at this time, insofar as it relates to communications involving DiMuroGinsberg, P.C., Greenberg Traurig, LLP or Squire Patton Boggs, LLP as they may be privileged.

### E. Depositions

Plaintiff moves for an order compelling defendants to "move forward with scheduling depositions without the improper pre-conditions that Defendants are attempting to require." Dkt. No. 86-1 at 27. Defendants concede "that Defendants' counsel sought to understand the nature of the deposition in advance," but contend their position is "so that Defendants could decide whether or not to seek a protective order, which seemed to be more efficient than waiting until the date of the deposition and questions were being asked to potentially request an adjournment." Dkt. No. 89-14 at 29. Defendants indicated that their "concern is with depositions occurring that are only relevant to claims that are the subject of their motion to dismiss." Id. at 29. As the motion

to dismiss has been decided, dkt. no. 98, and it does not appear that defendants have moved for a protective order specifically related to any defendants' deposition, it would appear that depositions now should be able to proceed. Accordingly, this portion of plaintiff's motion is granted. To the extent there are depositions still at issue, defendants are ordered to participate in depositions relevant to all claims and defendants not otherwise dismissed by this Court's January 25, 2018 Memorandum-Decision and Order. Defendants are reminded that unless defendants properly seek and obtain a stay of discovery while a dispositive motion is pending, discovery – including depositions – are to proceed.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion to Compel Discovery, Dkt. No. 86, is **GRANTED IN PART**, insofar as defendants are ordered to produce the outstanding discovery within the time frames set forth below, and it is further

**ORDERED**, that plaintiff's Motion to Compel Discovery, Dkt. No. 86, is **DENIED IN PART**, insofar as the Court

(1) declines, at this time, to order defendants to produce discovery relating to communications between defendants and DiMuroGinsberg, P.C., Greenberg Traurig, LLP, or Square Patton Boggs, LLP, and

(2) declines, at this time, to issue a "conditional order of preclusion" barring defendants from raising certain defenses;

**ORDERED**, that defendant's Cross-Motion for a Protective Order, Dkt. No. 89, is **DENIED**, and it is further

**ORDERED**, that pursuant to the terms of this Memorandum-Decision and Order, parties must comply with the following deadlines:

(1) Within **fourteen (14)** days of entry of this Memorandum-Decision and Order parties must:

    (a) meet and confer to agree to a "defined universe of search terms" relating to outstanding discovery identified in Dkt. No. 86-1 at 11-12, ¶¶ 7, 8, 9, 10, 17, 22, and 23;

    (b) if parties cannot determine whether requested discovery (not otherwise identified in the paragraphs above) has been overturned or remains outstanding, parties are to meet and confer to identify any discovery that must still be produced;

(2) Within **thirty (30)** days of entry of this Memorandum-Decision and Order, defendants must:

    (a) provide plaintiff an affidavit: indicating how the electronic discovery already produced is ordinarily maintained, providing a categorization/identification system for the discovery, identifying the interrogatories to which the disclosure responded, and associating with each disclosure the defendants who are providing such response;

    (b) produce any outstanding discovery relating to plaintiff's requests at Dkt. No. 86-1 11-12, at ¶¶ 7, 8, 9, 10, 17, 22, or 23;

    (c) if not already provided, produce copies of Purchase Order Requests,

Reimbursement Requests, with submitted invoices and receipts, and corporate approvals, for the items defendants claim plaintiff misappropriated;

(d) produce any discovery which may show defendants' awareness of plaintiff's protected activity or provide an affidavit indicating that defendants have performed a diligent search and have uncovered no documents indicating defendants' awareness of plaintiff's efforts to uncover fraud;

(e) produce documents responsive to discovery demands relating to plaintiff's post-termination requests or provide an affidavit indicating that defendants underwent a diligent search and no such documents exist;

(f) produce documents relating to any disparaging statements defendants made about plaintiff in the construction industry or an affidavit indicating that defendants underwent a diligent search and have not found any documents to exist;

(g) produce an affidavit indicating when representation by Lynn Law Firm began and ended regarding matters related to plaintiff;

(h) produce documents responsive to plaintiff's request for communications between Lynn Law Firm and Louis Falvo, Syracuse Police Department, Onondaga County District Attorney's Office, Travelers or Charter Oak Insurance Company, Syracuse Post Standard or "any other media outlet," Dannible & McKee, "GPS vendor," or "computer forensics vendor" or provide a detailed privilege log indicating why any such documents are privileged.

**IT IS SO ORDERED**.

Dated: September 18, 2018
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge