**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, ex rel.
JOHN RUBAR,

|  |  |
|---|---|
| Plaintiff/Relator, | 5:14-CV-830 |
|  | (GLS/CFH) |

v.

THE HAYNER HOYT CORPORATION,
JEREMY THURSTON, GARY THURSTON,
LEMOYNE INTERIORS, DOYNER INC.,
RALPH BENNETT, and 229 CONSTRUCTORS,
LLC,

Defendants.

**APPEARANCES:**                                    **OF COUNSEL**:

U.S. Department of Justice                          ADAM J. KATZ, ESQ.
445 Broadway
James T. Foley Courthouse
Albany, New York 12201
Attorneys for United States
of America

Sadowski Katz LLP                                   RAPHAEL KATZ, ESQ.
11 Broadway, Ste. 615                               ROBERT W. SADOWSKI, ESQ.
New York, New York 10004
Attorneys for plaintiff/relator

Hancock Estabrook, LLP                              JOHN G. POWERS, ESQ.
1500 AXA Tower I                                    PAUL J. TUCK, ESQ.
100 Madison Street
Syracuse, New York 13202
Attorneys for plaintiff/relator

Greenberg Traurig, LLP, DC Office                   MELISSA P. PRUSOCK, ESQ.
2101 L Street N.W.
Washington D.C., 20037
Attorneys for defendants/
Intervenor/Counterclaimant

Barclay Damon LLP                          JON P. DEVENDORF, ESQ.
One Park Place                             KAYLA A. ARIAS, ESQ.
300 South State Street
Syracuse, New York 13202-2078
Attorneys for defendants/
Intervenor/Counterclaimant

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

### I. Background

Presently pending before the undersigned is plaintiff's letter motion "to Compel

Discovery and Hold Non-Party Dannible & McKee, LLP ("Dannible") in Contempt for

Failing to Comply with a Lawful Subpoena." Dkt. No. 74 at 1. Plaintiff provides that

Dannible has improperly refused to comply with subpoenas requesting material relating

to the Report and its drafting. See Dkt. No. 74. Defendants and Dannible[1] opposed.

Dkt. No. 75. Dannible contends that it has produced documents responsive to the

subpoenas, excepting the following documents/categories: (1) drafts of the Dannible

Report (hereinafter "Report"), (2) unredacted time records relating to creation of the

Report, (3) a draft of an engagement letter between Lynn Law Firm and Dannible, (4) e-

mail communications between Lynn Law Firm and Dannible regarding drafts of the

Report, and (5) e-mail communications that "contain confidential information or the

mental impressions of an attorney or his agent." Dkt. No. 75 at 2. Further, defendants

provide that they have made Christopher Didio, a Dannible partner, available for

deposition in response to plaintiff's subpoena. Id. at 1. Defendants and Dannible

contend that "[t]he subpoenaed documents are confidential and privileged attorney-

_____

[1] Defendants' attorneys also represent nonparty Dannible. Dkt. No. 75 at 1.

client communications" and "constitute attorney-work product." Id. at 3, 6. Defendants

and Dannible "request that a protective order be entered in this case and . . . that

Plaintiff cover [Dannible's] unnecessary expenses associated with responding to the

aforementioned subpoenas." Id. Defendants have produced the withheld documents

for in camera review. Id.


## II. Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense – including the existence, description, nature, custody,

condition, and location of any documents or other tangible things and the identity and

location of persons having knowledge of any discoverable matter." FED. R. CIV. P.

26(b)(1). Further, "[i]nformation within this scope of discovery need not be admissible in

evidence to be discoverable." Id. In New York Teamsters Council Prepaid Legal Servs.

Plan v. Primo & Centra, this Court clearly explained the attorney-client privilege:

> The attorney-client privilege is a privilege of common law
> that is to be applied "in light of reason and experience."
> United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619,
> 2625-26, 105 L.Ed.2d 469 (1989); Fed. R. Evid. 501. The
> central purpose behind the attorney-client privilege is "to
> encourage full and frank communication between attorneys
> and their clients and thereby promote broader public
> interests in the observance of law and administration of
> justice." Upjohn Co. v. United States, 449 U.S. 383, 389,
> 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Nonetheless,
> the privilege is not absolute. "Since the privilege has the
> effect of withholding relevant information from the factfinder,
> it applies only where necessary to achieve its purpose."
> Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569,
> 1577, 48 L.Ed.2d 39 (1976).

3

159 F.R.D. 386, 388 (N.D.N.Y. 1995).

The attorney-client privilege "enable[s] attorneys to give informed legal advice to clients" and "protects communications between a client and its attorney that are intended to be, and in fact were, kept confidential." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015). This Court has held that communications are deemed confidential if:

> (1) . . . legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communication relates to that purpose, (4) made in confidence, (5) by the client, and (6) are at his or her insistence permanently protected, (7) from disclosure by the client or the legal advisor, (8) except if the protection is waived.[2]

Trudeau v. New York State Consumer Protection Bd., 237 F.R.D. 325, 335-36 (N.D.N.Y. 2006) (citing United States v. Int'l Broth. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997), (In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984)); see also United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The privilege protects the attorney's advice to the client and the information communicated by the client that provides a basis for giving advice. See Upjohn Co., 449 U.S. at 390; In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir. 1992); Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "But since the privilege stands in derogation of the public's right to every man's evidence, . . . it ought to be

---

[2] The federal attorney-client privilege standard has also been defined in the following manner: "(1) [t]he attorney-client privilege protects communications between a client and his or her attorney (2) that are intended to be, and in fact, were, kept confidential (3) for the purpose of obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The undersigned finds both iterations of the privilege to be a proper statement of the law, and finds no substantial difference between the two in their application.

strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

For a party "to assert privilege under the attorney work product doctrine, they must be able to show that the document[ ][was] prepared (1) 'in anticipation of litigation' (2) by a party or its representative and (3) not in the ordinary course of business." Ricoh Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 68 (S.D.N.Y. 2003) (citation omitted). The party asserting the work-product privilege bears the "heavy burden of establishing its applicability." In re Grand Jury Subpoena Dated July 6, 2005, 510 F. 3d 180, 183 (2d Cir. 2007). However, "[o]nce a party establishes that its document is protected by the work-product privilege, the burden shifts to the party seeking discovery to prove that discovery is warranted." NL Industries, Inc. v. ACF Indust. LLC, No. 10CV89W, 2015 WL 4066884, at *5 (W.D.N.Y. July 2, 2015). "Even where the applicability of the work product doctrine has been established, factual material may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" Garnier v. Illinois Tool Works, Inc., No. 04CV1825 (NGG)(KAM), 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006) (quoting Upjohn Co. v. United States, 449 U.S. 383, 400 (1981)) (quoting In re Omeprazole Patent Litig., No. M-21-81, 2005 WL 818821, at *9 (S.D.N.Y. Feb. 18, 2005); In re Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir. 2000) ("A party seeking discovery of attorney work-product must show "substantial need," for fact work-product. As for work-product that shows 'mental impressions, conclusions, opinions, or legal theories of an attorney, . . . at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.")

(internal citations and quotation marks omitted). However, "opinion work product" "enjoys 'near absolute immunity.'" Foti v. City of Jamestown Bd. of Public Utilities, 10CV575A, 2014 WL 3842376, at *3 (W.D.N.Y. Aug. 5, 2014). "[T]he privilege derived from the work product doctrine is not absolute[,] . . . it may be waived.'" Foti, 2014 WL 384376, at *3 (quoting United States v. Nobles, 422 U.S. 225, 238-39) (1975). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp.3d 142 (E.D.N.Y. 2014) (citing Scholtisek v. Eldre Corp., 441 F. Supp. 2d 459, 462 (W.D.N.Y. 2006) (additional citations omitted)).

### III. Discussion

#### A. Dannible Report

##### 1. Are Report and Drafts Privileged?

Plaintiff argues that the drafts of the Report, communications between Dannible and Lynn Law Firm about the Report, and unredacted billing records "listing the what [sic] work it performed on what date" should not be withheld from discovery as privileged. Dkt. No. 74 at 2. In arguing that the Report is not protected by the attorney-client or work product privileges, plaintiff raises various points which essentially set forth iterations of the same argument – because the Report was not prepared in anticipation of litigation, the Report and its drafts are not privileged. See Dkt. No. 74. Specifically, plaintiff contends that the Report cannot be found to have been prepared in anticipation of litigation because (1) the Report "was not use [sic] solely to assist the Law Firm in

6

providing advice to Hayner or Doyner"; rather, its purpose was "disclosure to a third party, not to obtain legal advice"; (2) defendants did not anticipate litigation when they retained Dannible to prepare the report as there was no civil litigation planned or pending against plaintiff at that point; and (3) defendants did not keep the Report confidential.  See generally id.  Defendants contend that the Report was prepared in anticipation of litigation, pointing to the engagement letter between Dannible and Lynn Law Firm which states that the engagement encompassed a potential civil and criminal claim and required Dannible to keep all aspects of this matter confidential.  Dkt. No. 75 at 5, 7.  Responding to plaintiff's contention that defendants have already released "a full un-redacted copy of Dannible's accounting report" to the Syracuse Police Department ("SPD") and the Report to news outlets, defendants provide that they never provided SPD with drafts of the Report; thus, they contend they did not waive any privilege with regard to the drafts.  Id. at 3.

"The attorney work product doctrine 'provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial.'"  In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d at 183 (quoting In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003)); FED. R. CIV. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).").  "'A document need not be prepared primarily or exclusively to assist at trial in order to be prepared 'in anticipation of litigation.'"  Harris

v. Provident Life & Accident Ins. Co., 198 F.R.D. 26, 30 (N.D.N.Y. 2000) (citing Mount Vernon Fire Ins. Co. v. Try 3 Building Services, Inc., 96 CIV. 5590, 1998 WL 729735, at *5) (S.D.N.Y. Oct. 16, 1998)) (additional citation omitted).  "The proper test is whether 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Harris, 198 F.R.D. at 30 (quoting United States v. Aldman, 134 F.3d 1194, 1202 (2d Cir. 1998)) (additional citation omitted).  "However, more than a 'remote possibility of litigation must be shown.'" Id. (quoting Occidental Chemical Corp. v. OHM Remediation Services Corp., 175 F.R.D. 431, 434 (W.D.N.Y.1997)).  "Rather, '[l]itigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation.'" Id. (quoting James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 143 (D. Del. 1982)).  The work product doctrine protects not only materials which are prepared by attorneys themselves, but also by their agents.  Costabile v. Westchester, N.Y., 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (citation omitted).  "The work-product privilege includes both opinion work product, such as an attorney's mental impressions or legal theories, and fact work product, such as factual investigation results." NL Industries, Inc., 2015 WL 4066884, at *5.

Defendants contend that they retained Dannible to draft the Report to ascertain whether there was cause for criminal prosecution as well as potential civil litigation. Plaintiff contends that civil litigation was not contemplated at the time as defendants, through Lynn Law Firm, retained Dannible to investigate for purposes of criminal

prosecution and filing an insurance claim.  Plaintiff contends that Lynn Law Firm's

providing "a full copy of the report and 40 pages of supporting material to the SPD and

DA's office very shortly after it was complete, confirms its purpose was disclosure to a

third party, not to obtain legal advice."  Dkt. No. 74 at 6.  This argument does not

compel the Court to reach a different result.  Plaintiff has presented no case that holds

that documents drafted for the purpose of convincing a law enforcement agency or

prosecutor with the intent that the law enforcement /prosecutor to criminally prosecute a

party is exempt from the "anticipation of litigation" realm.  Although defendants did not

have control over whether the SPD and the District Attorney's Office would

investigate/prosecute the case, the Court need not reach the question whether a

document drafted by a nongovernmental agency – such as here, by an agent of the

alleged "victim" – with an intent to encourage prosecutors to pursue a criminal case

suffices to show that the document was drafted in anticipation of litigation because the

Court determines that defendants have demonstrated that the document was drafted,

at least in part, with the foresight of potential future civil litigation.  See generally In re

Leslie Fay Companies, Inc. Sec. Litig., 161 F.R.D. 274, 280 (S.D.N.Y. 1995) (noting

that "the 'in anticipation of litigation' requirement does not limit protection to documents

prepared in the course of an ongoing litigation.") (citation omitted).

Indeed, the engagement letter for Dannible explicitly indicates that the

"agreement" between Lynn Law Firm and Dannible "encompasses both a potential civil

and criminal claim."  Dkt. No. 75-3 at 2.  Further, anticipation of litigation is supported by

Lynn Law Firm's letter to plaintiff advising him that they intended to pursue civil and

criminal litigation against him.  Dkt. No. 75-5 at 2.  In addition to documenting that

Dannible would be performing a "forensic accounting examination," the engagement

letter also notes that Dannible may need to provide "potential expert testimony."  Id.

Here, when defendants' retained law firm, Lynn Law Firm, hired Dannible to draft the

Report, they contend that they wanted to learn whether plaintiff had misappropriated

funds.  With that knowledge, defendants would then determine whether to pursue

litigation.  Thus, it is clear that there was "'more than a 'remote possibility of litigation'"

when Lynn Law Firm retained Dannible to draft the Report.  See Harris v. Provident Life

& Accident Ins. Co., 198 F.R.D. 26, 30 (N.D.N.Y. 2000) (quoting Mount Vernon Fire Ins.

Co. v. Try 3 Bldg. Services, Inc., 96 CIV. 5590 (MJL/HBP), 1998 WL 729735, at *5

(S.D.N.Y. Oct. 16, 1998), Occidental Chemical Corp. v. OHM Remediation Servs.

Corp., 175 F.R.D. 431, 434 (W.D.N.Y. 1997)) (additional citations omitted).  As

defendants are not required to prove that their sole or primary purpose[3] in obtaining the

Report was litigation, and they have demonstrated that it was one of the purposes of

the Report, the Court is convinced that the Report was drafted in anticipation of

litigation as "it can be fairly said to have been prepared or obtained because of the

prospect of litigation."  Aldman, 134 F.3d at 1202.

     Plaintiff's citation to and discussion of Koumoulis, 295 F.R.D. at 37, in this

---

[3]  The Court acknowledges, as the Southern District of New York did in In re Vecco Instruments,
Inc. Securities Litigation, that "'[o]ther courts – including some district courts in the Second Circuit – had
previously held that a document merits protection as work product only if it is prepared principally or
exclusively to assist in litigation,' but that 'Aldman concluded that such a restrictive reading is unwarranted
by the plain language of the statute and threatens to deny protection to documents that implicate key
concerns underlying the work-product doctrine.'"  2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) (quoting
United States v. Aldman, 134 F.3d 1194, 1202 (2d Cir. 1998)).

context, does not compel the Court to reach a different result.  In <u>Koumoulis</u>, the

Eastern District of New York noted that "[i]n the context of the *attorney-client privilege*,

'legal advice involves the interpretation and application of legal principles to guide future

conduct or to assess past conduct.  Obtaining or providing such legal advice must be

the 'predominant purpose' of a privileged communication."  <u>Id.</u> (emphasis added); Dkt.

No. 74 at 6.  Thus, plaintiff suggests that because legal advice was not the

"predominant purpose" of the Report; rather, it was to convince the SPD and DA's office

to pursue investigation/prosecution, as well as file an insurance claim.  However, the

work-product privilege is broader than the attorney-client privilege.  <u>See</u>, <u>e.g.</u>, <u>E.E.O.C.</u>

<u>v. Carrols Corp.</u>, 215 F.R.D. 45 (citing <u>Nobles</u>, 422 U.S. at 238 n.11) ("Now codified at

Fed. R. Civ. P. 26(b)(3), the work product doctrine is entirely separate from, and

broader than, the attorney client privilege.").  The Report is not protected by the

attorney-client privilege as it does not seek to communicate legal advice or counsel;

thus, the relevant inquiry is whether the Report and drafts are prepared at the "behest

of counsel" in anticipation of litigation and covered by the work-product privilege.  <u>In re</u>

<u>Grant Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002</u>, 318 F.3d 379, 383 (2d Cir.

2003) (citations omitted).  There is nothing in Rule 26 that requires

> "that documents be produced primarily or exclusively to
> assist in litigation in order to be protected [a]s [such a
> requirement is] at odds with the text and policies of the Rule.
> No where does Rule 26(b)(3) state that a document must
> have been prepared *primarily* or *exclusively* to aid in
> litigation.  Preparing a document 'in anticipation of litigation'
> is sufficient.'"

<u>In re Symbol Technologies, Inc. Securities Litig.</u>, CV 05-3923 (DRH/AKT), 2017 WL

1233842, at *8 (E.D.N.Y. Mar. 31, 2017).

Defendants paradoxically contend that the *drafts* of the Report are privileged because they were prepared in anticipation of litigation, but fail to explain why or how the final version of the Report would not also be privileged. Although defendants do not explicitly make this argument, it is the natural result of their argument contending that disclosing the final Report to third parties and plaintiff did not waive the privilege with respect to the drafts. Insofar as defendants may be arguing that the final draft of the Report is not privileged, the Court must reject that argument for the reasons discussed above. Accepting defendants' argument as to the privilege of the drafts requires the reader to conclude that the final Report was prepared in anticipation of litigation. Alternatively, defendants may be contending that the final Report was privileged, but that disclosing that report did not amount to waiver of the privilege. Regardless whether defendants stand behind either of the arguments implied by their submission, Dkt. No. 75, the Court must determine whether defendants waived the work-product privilege by disclosing the final Report to third parties and/or to plaintiff, and, if so, the extent of that waiver.

### 2. Did defendants waive privilege?

As an alternative argument, plaintiff argues that defendants waived any work-product privilege they may have as to the drafts of the Report insofar as they turned over the final draft of the Report to SPD and the DA's office. Dkt. No. 74 at 8. Defendants argue that they never waived any privilege because (1) "although it

12

disclosed the Dannible report to the SPD and District Attorney's office, "Defendants have never disclosed the communications it asserts are privileged, and (2) "Defendants were not in an adversarial relationship with the SPD or District Attorney's Office when they disclosed the Report[.]" Dkt. No. 75 at 8.

"This privilege may be waived and 'the party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived.'" NL Indus., Inc., 2015 WL 4066884, at *5 (quoting Bank of Terra Nova Ins. Co., 212 F.R.D. at 169 (additional citation omitted)). "The test for waiver is 'whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.'" Id. (quoting In re Vitamin C Antitrust Litig., No. MD 06-1738, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (Orenstein, Mag. J.) (additional citations omitted); Terra Nova Ins., Co., 212 F.R.D. at 170 ("[A] waiver of work product protection occurs when the covered materials are used in a manner that is inconsistent with the protection.") (citing Granite Partners v. Bear, Sterns & Co., Inc., 184 F.R.D. 49, 55 (S.D.N.Y. 1999) ("[T]he issue of waiver rests not on whether a privileged document is introduced into evidence, but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege.") (citations omitted). "'[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.'" Koumoulis, 295 F.R.D. at 40 (quoting In re Grand Jury Proceedings, 219 F.3d at 182, citing In re Cnty. of Erie, 546 F.3d 222, 229 (2d Cir. 2008)). Further, voluntary disclosure of

documents to a third party may waive the work-product privilege. <u>Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.</u>, No. 08 CIV. 6143 (DLC), 2010 WL 343490, at *3 (S.D.N.Y. Feb. 1, 2010) (citing <u>Grand Jury Proceedings</u>, 219 F.3d at 191). Waiver of the work-product privilege "'differs than from the attorney-client communication privilege, where disclosure in the latter situation to a third party will automatically waive that privilege.'" <u>NL Indus., Inc.</u>, 2015 WL 4066884, at *5 (quoting <u>Carpenter v. Churchville Greene Homeowner's Ass'n</u>, No. 09-CV-6552, 2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011)).

In cases where the governmental agency stands as an adversary, the issue of waiver is fairly clear, with many courts in this district holding that the privilege is waived where the document is not subject to a confidentiality agreement between the party and the government agency. <u>See</u>, <u>e.g.</u>, <u>S.E.C. v. Vitesse Semiconductor Corp.</u>, 771 F. Supp.2d 310, 313-14 (S.D.N.Y. 2011). However, where the governmental agency is not an adversary, the question of waiver is less clear. In this circumstance, the Court is to assess "whether the disclosure to the governmental agency would 'materially' or 'substantially' increase the likelihood that the disclosing party's adversary would obtain the information[.]" <u>Terra Nova Ins. Co.</u>, 212 F.R.D. at 170. A further wrinkle of this case, however, is that the document disclosed to the law enforcement agencies – the final version of the Report – has already been disclosed to plaintiff; the documents in question are the drafts of the Report. Defendants contend that the drafts have never been disclosed to any party, and plaintiff offers nothing to dispute this contention. Thus, the Court will first determine whether disclosure of the final version of the Report,

a document the Court has already concluded is entitled to work product protections, waived the privilege with respect to the Report's drafts.

The Eastern District of New York has addressed a somewhat comparable question. The Court is persuaded by its logic.

> A distinct category of cases in which courts have considered waiver are those in which the disclosure of information to governmental authorities was made in the hope that the government will "attack" the disclosing party's adversary. Information Resources, 999 F. Supp. at 592. Such disclosure, it has been held, "cannot be said to be done 'in the pursuit of trial preparation,' and "disclosure in such a situation results in a waiver of the work product protection." Bank of America, 212 F.R.D. at 172-73 (quoting AT&T, 642 F.2d at 1299); see also Information Resources, Inc., 999 F. Supp. at 593 (S.D.N.Y. 1998) (protection waived where materials were submitted voluntarily to stimulate official action beneficial to discloser); Three Crown Ltd. P'ship v. Salomon Bros., Inc., 1993 U.S. Dist. LEXIS 9995 at *2 (S.D.N.Y. July 21, 1993) (protection waived where work product materials used to "persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation.")

Matrix Essentials, Inc. v. Quality King Distributors, Inc., No. CV901070 (LDW/WDW), 2006 WL 8435312, at *2 (E.D.N.Y. Jan. 12, 2006).

It cannot be said that disclosing the final draft to the SPD, District Attorney's Office, insurance agency, and plaintiff is consistent with maintaining secrecy of either the final Report or its drafts against opponents. It could be expected that disclosing a final version of a document could result in waiver of privilege for its drafts. "The core goal of the [work product] doctrine is 'to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries.'" Adlman, 134 F.3d at 1196. By

15

providing the final version of the Report to the SPD and District Attorney's Office, the Court concludes that defendants waived the work-product privilege with respect to both the final Report and its drafts. The disclosure of this Report to the SPD and DA's office is comparable to those cases discussed within Matrix. 2006 WL 8435312, at *2. Defendants provided the final version of the Report to the governmental agencies with the hope that the Report would serve to convince the SPD to investigate and the DA's Office to criminally prosecute. These agencies "were neither adversaries nor allies when the documents were submitted." Information Resources, Inc., 999 F.Supp. at 593. Although defendants may have labeled the Report and its drafts "Private & Confidential," there is no evidence that there was a confidentiality agreement in place between defendants and the SPD or DA's Office. See Terra Nova Ins. Co., 212 F.R.D. at 172 ("When material is disclosed to a law enforcement agency without any agreement regarding confidentiality, there is a strong potential that the material may ultimately become public and thus available to an adversary. This may occur if the material is used at trial – either as part of the government's case-in-chief or for purposes of cross-examining a witness.") (citation omitted). Moreover, by providing the final version of the Report to plaintiff during the course of discovery, defendants cannot convincingly argue that the drafts of the Report are privileged. "[T]he protection is unavailable when the disclosure is not made "in the pursuit of such trial preparation" or when the disclosure is made in a manner that is "inconsistent with maintaining secrecy against opponents." Id. at 170.

Plaintiff cites Koumoulis, 295 F.R.D. 28, in arguing that drafts of the Report

16

should be discoverable. There, the Eastern District of New York rejected the defendant's argument that the attorney-client privilege protected drafts versions of documents "shared with outside counsel" where the defendants had already produced final versions of those documents. Id. at 47. The Court noted that drafts were drafted by a nonattorney who forwarded the drafts to counsel. Id. The Court observed that the author of the drafts asked for the attorney's "review/edits" on one of the three documents sent. Id. In the context of those facts, the Court held that "[f]orwarding the first three documents to counsel does not confer any privilege and concerning the last document, the request for 'review/edits' is not a request for legal advice on the context of [the author's] e-mail and Defendants' other communications with [the attorney]." Id. Thus, the Court concluded that the work-product privilege did not apply to the drafts. Id.

Koumoulis further supports the conclusion that the privilege has been waived. Here, although the drafts were not written by an attorney, based on the Court's in camera review, at least one version of the Report contains suggested redline edits from an attorney. Thus, although, like in Koumoulis, the underlying draft was not written by an attorney, the drafts do contain edits or suggestions made by the attorney. However, after reviewing the edits in the draft, the Court concludes that the requests for review, and the subsequent edits Mr. Lynn made, were not "requests for legal advice." Koumoulis, 295 F.R.D. at 37. Indeed, the majority – though, not all – of the edits are stylistic rather than substantive. See, e.g., In re Avandia Mktg., Sales Practices & Prod. Liab. Litig., No. 07-MD-01871, 2009 WL 4641707, at *2 (E.D. Pa. Dec. 7, 2009)

(holding although drafts may be considered privileged if they were prepared "for the purpose of obtaining a legal opinion and contain confidential information or legal advice not included in the final version . . . . [e]ven in these cases, the Court may find that only the portions of the draft reflecting the legal advice are privileged. However, if the attorney is primarily evaluating the business ramifications of a document or other communication, it will not be privileged.") (citation omitted). Further, based on a review of the communications, the suggestions appeared to be optional, rather than mandatory. Although Koumoulis does not set forth a bright-line rule as to whether privilege is waived with respect to documents already disclosed, it does provide helpful factors for the Court to consider in assessing whether drafts of a document released to the adversary were privileged work product. Applied in the case at hand, these considerations lean the Court toward a finding that the drafts are not privileged because defendants waived the privilege as to the draft reports when it disclosed the final Report. This finding is further bolstered by the in camera review revealing that the content of the attorney's input on the drafts largely does not appear to be legal in nature.

Accordingly, the Court concludes that defendants waived the privilege with respect to drafts of the Report. Thus, defendants must disclose the drafts to plaintiff within twenty-one (21) days of entry of this Memorandum-Decision & Order.

### B.  E-mail communications

Defendants contend that e-mail communications "regarding the drafts" and "a

limited number of other e-mail communications that contain confidential information or the mental impressions of an attorney or his agent" are protected from disclosure. Dkt. No. 75 at 2. The privilege log reveals that defendants withheld e-mails between Lynn, Didio, Hensler, O'Connor, and LaRue "regarding draft investigation report letter." Dkt. No. 75-4 at 6-7, 11 (dated 3/28/14). Defendants submitted the e-mails they withheld for in camera review.[4] Several of the e-mails are logistic in nature and do not contain privileged information. Others reference material for which this Court has already determined that the privilege has been waived.

The Court finds that e-mails 000306-000309 are not subject to privilege. Defendants do not provide a specific reason as to why this e-mail should be protected from disclosure. E-mails 000310-000313 are also not subject to privilege as it relates to scheduling as well as items needed for the Report. E-mail 543-544 is not privileged; although it is a communication between Martin Lynn and employees at Dannible, the e-mails themselves do not reveal any privileged advice or impressions. Further, insofar as the e-mails may refer to the draft Report, to which this Court concludes defendants waived their privilege, the substance of that material will be disclosed to plaintiff subject to this Memorandum-Decision & Order. Thus, the e-mails referring to this draft, which in and of themself do not reveal any further privileged information, should be disclosed. Similarly, the e-mail at 000552-000553 also does not contain privileged information and merely references the draft report to which privilege has been waived. For the same

---

[4] Some of the e-mails submitted in camera have already been disclosed. Dkt. No. 74-6. Thus, the Court will not endeavor to review those e-mails as they do not appear to be in dispute.

19

reasons, the e-mails at 000628-000629 and 000630-000631 are not privileged, and, thus, not protected from disclosure.  E-mails 000607, 000615-000616, 000624-000625, and 000626-000627 are not privileged as they do not contain a confidential communication.  Report 000608-000614 and 000617-000623 are not privileged as these documents are ones that the Court has already determined the privilege has been waived. E-mail 000640-685, which appears to be an attachment document to an e-mail, is not privileged, as the Court has already determined that the privilege for the material within has been waived.  E-mail 000686-000687 is not privileged as it does not reveal any confidential communications. E-mail 000688-692 is not privileged as the Court has already determined that the privilege has been waived with respect to this material.  E-mail 000827 is not privileged as it does not contain a confidential communication.  Letter 000828-000834 is not privileged as it is a document for which this Court has already determined the privilege has been waived.

E-mails 000835 and 000842 are not privileged as they do not contain any communication beyond a subject line, which has already been revealed in the privilege log.[5]  E-mails 000843-000844 and 000836 are not privileged as it does not contain any privileged communications.  Letter 000837-000841 is not privileged as the Court has determined that the privilege has been waived with respect to this document. E-mail 000984 is not privileged as it does not contain any communication beyond a

---

[5]  To the extent e-mails 000835 and 000842 may refer to an excel spreadsheet, such spreadsheet is not contained within 000835 or 000842 nor have defendants directed the Court to the portion of the in camera documents where this may be located.  Thus, the Court's determination as to 000835 and 000842 does not address any potential attachments.

subject line, which has already been revealed in the privilege log.  Report 000845-000890 and letter 000985-000989 are not privileged, as the Court has already ordered that the privilege has been waived with respect to this document.  E-mail 000991-000995 is not subject to privilege as it refers to, and includes, a document for which this Court has concluded privilege has been waived.  E-mails 000996 and 000998 are not privileged as they do not contain any confidential communications.  Letter 000999-001044 is not privileged as the Court has already determined that the privilege with respect to this document has been waived.  Accordingly, defendants must produce to plaintiff all previously withheld e-mails documented in the privilege log within twenty-one (21) days of entry of this Memorandum-Decision & Order.

## C.  Unredacted Time Records

As this Court set forth in its decision on a prior motion to compel in this case, Dkt. No. 108, a plaintiff may be entitled to time records unless the records "contain detailed accounts of the legal services rendered.'"  <u>Mohr v. Sec. Credit Services, LLC</u>, 141 F. Supp.3d 179, 185 (2015).  Here, however, plaintiff is not seeking attorney time records; rather, it appears he is seeking time records for Dannible, the accounting firm Lynn Law Firm retained to perform forensic accounting and draft the Report.  The privilege log indicates that the redactions provided "refer to communications with M. Lynn."  Dkt. No. 74-2 at 12.

Although the Court has before it defendants' privilege log and <u>in</u> <u>camera</u> submissions, it does not have unredacted time records before it for <u>in</u> <u>camera</u> review.  It

has only the redacted time records.  Dkt. No. 74-7 at 2.  Thus, the Court cannot determine whether the redacted time records "contain detailed accounts of the legal services rendered.'"  <u>Mohr</u>, 141 F. Supp.3d at 185.   Specifically, the Court cannot assess whether an unredacted billing record that apparently references communications with Martin Lynn of Lynn Law Firm would reveal attorney-client privileged communications.

Accordingly, the Court orders defendants to produce the unredacted time records to plaintiff within twenty-one (21) days of entry of this Memorandum-Decision & Order, *unless*, within seven (7) days of entry of this Memorandum-Decision and Order, defendants provide to the Court a copy of the unredacted time records, along with a clear indication of which communications defendants believe to be privileged, for further <u>in</u> <u>camera</u> review.  If defendants choose to pursue the option of further <u>in</u> <u>camera</u> review of the unredacted time records, production of the unredacted time records to plaintiff would be entirely dependent on that second Court review and a subsequent Court order.

### D.  Draft Engagement Letter

Defendants contend that they have withheld a draft of the engagement letter between Lynn Law Firm and Dannible.  Dkt. No. 75 at 2.  Plaintiff does not directly address this document in his letter motion.  The Court has reviewed the <u>in</u> <u>camera</u> submissions closely and cannot locate a draft engagement letter within the submission. However, the Court observes that defendants have submitted what appears to be the

final draft of the engagement letter.  Dkt. No. 75-3 at 2-3.  The final engagement letter sets forth Dannible's fees, payment structure, the general extent of the services Dannible was to perform, and boilerplate language about how Dannible and Lynn Law Firm would address disputes regarding payment.  The final engagement letter is not privileged.  Defendants/Dannible fail to set forth any argument explaining why the draft letter contains privileged information, such as whether the draft letter would contain "undisclosed motive, strategy, or the nature of the services provided" beyond what is included in the disclosed final engagement letter.  See generally Newmarkets Partners, LLC v. Sal Oppenheim Jr. & Cie. S.C.A., 258 F.R.D. 95, 101 (S.D.N.Y. 2009) (citation omitted).  Indeed, "[i]n general, the 'fact of retainer [and] identity of the client' are not privileged, because they do not qualify as 'confidential communications' made for the purpose of securing legal advice.").  Id. at 101 (quoting United States v. Pape, 144 F.2d 778, 782 (2d Cir. 1944), citing Gaus v. Conair Corp., No. 94 Civ. 5693(KTD)(FM), 2000 WL 358387, at *3 (S.D.N.Y. Apr. 7, 2000) ("The attorney-client privilege typically does not extend, however, to the identity of the client(s) or the fee arrangements that the client(s) may have entered into with the attorney.").

Accordingly, as defendants have not met their burden of demonstrating that a draft engagement letter between Dannible and Lynn Law Firm is subject to privilege, defendants/Dannible are ordered to produce the draft letter to plaintiff within twenty-one (21) days of entry of this Memorandum-Decision & Order unless, within seven (7) days of entry of this Memorandum-Decision & Order, defendants submit for the Court's review a copy of the draft engagement letter for this Court's in camera review.  If

defendants/Dannible choose to submit the draft for in camera review, any requirement to produce the draft to plaintiffs would be dependent on the Court's review and subsequent order.

## E.  Defendants' Request for Protective Order

Defendants request that the Court issue a protective order relating to "certain confidential documents, including tax returns, profit and loss statements, and non-public competitive information about Defendants and the jobs they performed (which would reveal information about Defendants' job bids, their margins on jobs, etc.)."  Dkt. No. 75 at 8.  Defendants provide that plaintiff does not consent to the entry of a "standard protective order which would allow the parties to designate documents they believe to contain sensitive information, and set forth the procedure for how a designation may be challenged."  Id. at 8-9 (citing Exh. G, Prop. Prot. Order).  Instead, defendants contend that plaintiff "instead expressed a willingness to consider protective provisions with respect to individual documents on a case-by-case basis.  Id. at 9.  Keeping in mind the age of this case and difficulties parties have encountered in proceeding through discovery expeditiously, the Court finds that an ad hoc approach could lead to further motion practice and greater delays.  Plaintiff has presented no reason as to why defendants' proposed protective order would be inappropriate.  Accordingly, the undersigned grants defendants' request and orders that parties are subject to the proposed protective order which shall be docketed as a separate order.  Thus, any documents *not otherwise ordered to be disclosed by the Court in a prior order*, that

relate to sensitive financial information about defendants, are now subject to the protective order. Parties are strongly cautioned that the Court expects the parties to seek use of the protective order judiciously and limit its applicability solely to sensitive, nonpublic financial information and financial strategies.

## IV. Conclusion[6]

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Letter Motion to Compel discovery is **GRANTED IN PART**, insofar as defendants/Dannible must, within **twenty-one (21)** days from the date of entry of this Memorandum-Decision & Order, provide to plaintiff:

(1) All draft versions of the Dannible Report;

(2) Draft of engagement letter between Lynn Law Firm and Dannible **or**, in the alternative, produce draft engagement letter to the Court for further in camera review within seven (7) days of the entry date of this Memorandum-Decision and Order;

(3) Dannible's unredacted time records, along with a clear indication of the communications to which the previously redacted portions refer, for further in camera review, **or**, in the alternative, produce said records to the Court for further in camera review within seven (7) days of the entry date of this Memorandum-Decision and Order; and

---

[6] Plaintiff's letter motion includes a subpoena upon Dannible partner Christopher Didio for his testimony. Defendants contend that they have agreed to produce Christopher Didio for deposition. Dkt. No. 75 at 2. It is unclear whether this deposition has taken place; however, this issue was not raised by plaintiff and the Court assumes it is not in dispute. See Dkt. No. 74 at 9 (setting forth plaintiff's request for relief).

(4) all withheld e-mail communications identified in Dkt. No. 74-2; and it is further

**ORDERED**, that plaintiff's Letter Motion (Dkt. No. 74) is **DENIED IN PART**

insofar as plaintiff seeks to hold nonparty Dannible in Contempt of Court; and it is

further

**ORDERED**, that defendant's request for a Protective Order (Dkt. No. 75) is

**GRANTED** as set forth within this Memorandum-Decision and Order, and the protective

order will be docketed as a separate Order; and it is further

**ORDERED**, that Defendants'/Dannible's request for "$1400 in expenses

associated with collecting documents and responding to Plaintiff's subpoena" (Dkt. No.

75) is **DENIED**; and it is further

**ORDERED**, that any relief requested in Dkt. Nos. 74, 75 that is not otherwise

addressed above is deemed **DENIED**.

**IT IS SO ORDERED**.

Dated: November 5, 2018
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge